DAISY TURNER, EXECUTRIX, *v.* ALBA M. BRAGG ET AL.

May Term, 1943.
On Motion for Reargument, November Term, 1943.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 5, 1943.

Opinion on Motion for Reargument filed January 4, 1944.

*Natt L. Divoll, Jr.* and *Herbert S. Avery,* of the Massachusetts bar, for the plaintiffs.

*Barber & Barber* for the defendants.

MOULTON, C. J. The plaintiffs are the nine daughters of Alexander Turner, deceased, residuary devisees of his estate, one of whom is the executrix of his will. The bill of complaint alleges that the defendants, Alba M. Bragg and the Bragg Lumber Corporation, have trespassed and cut timber upon certain lands, the property of the estate situated in the town of Athens, and, although

warned to desist, have refused to do so and threaten to continue. The prayer is that the defendants may be enjoined from further entry upon the lands, and cutting or removing the timber thereon and for general relief. A temporary injunction was issued, which was modified by a stipulation between the parties which among other matters permitted cutting on condition that a certain sum per 1000 feet cut should be deposited in trust to await the outcome of the litigation.

Hearing was held before the Chancellor, who, after filing written findings of fact, entered a decree for the defendants to recover their costs. The plaintiffs have brought the cause to this court upon exceptions. It has been here once before upon another issue, *Turner* v. *Bragg,* 113 Vt 156, 30 A2d 450.

These facts have been found: Alexander Turner in his lifetime owned real estate situated in the Town of Grafton and in the Town of Athens as now constituted. At the time these towns were originally chartered and surveyed they did not abut upon each other, since there was a strip of land lying between them, known as Avery's Gore, which was not included in either. This Gore was bounded on the north by the south line of Grafton and on the south by the north line of Athens. The latter line (to which it will be necessary later to refer in the course of this opinion) is known as the Old Athens line, or the Kelly line. By Act of the Legislature in 1815 a part of the Gore was annexed to the Town of Athens thus making its north boundary to coincide with the south boundary of Grafton.

The property belonging to the Turner Estate consists of three parcels. The first of these (designated on trial as the 50 Acre lot) lies in greater part at least in Grafton; the second (referred to as the 45 Acre lot) is of the same width and adjoins the 50 Acre lot on the south, and is situated in the present town of Athens, both of these parcels together being known as the Wilbur and White property from the names of Turner's grantors; the third, known for a like reason as the Wheelock lot, adjoins the Wilbur and White lots on the east and is in the present Town of Athens.

The trespasses complained of are claimed to have been committed on the 45 Acre lot and the plaintiffs rely upon their record title. The deed from Vestus A. Wilbur and Charles White to Alexander Turner, dated October 13, 1881, describes the land so

conveyed as being all and the same land conveyed to the grantors by Henry A. Thompson, by deed dated February 17, 1872. The deed from Thompson to Wilbur and White describes the property as bounded "on the south by land of Tisdale Porter and C. C. Fairbanks .... meaning by these presents to convey the same and all the land described in a deed from Nathan Wheeler to Joel Smith dated March 18, 1830." Henry Thompson derived his title from Stillman Thompson by deed dated March 2, 1871, describing the southern boundary as lands of Tisdale Porter and C. C. Fairbanks and referring to the deed from Wheeler to Smith. The Wheeler-Smith conveyance gives the southern boundary of the 45 Acre lot as "the old Athens Line" (the Kelly line, so called). There is no finding as to the source of Stillman Thompson's title, but the Chancellor has placed the northern line of the Tisdale Porter land south of the Kelly line, thus apparently assuming that Stillman Thompson owned property as far south as the Tisdale Porter lot and conveyed it by his deed to Henry Thompson.

Alexander Turner purchased the Wheelock lot from Henry H. Wheelock on April 7, 1884, the description being of land bounded on the north by land of Wheelock and Dexter Conant, west by land formerly of Wilbur and White and now by Alexander Turner, south by land of Butterfield and Smith and east by land of Townsend and Clark. The Clark lot is thus described in a former deed from Joseph Tinkham to Benjamin Smith, given in 1839: "Beginning at Tisdale Porter northeast corner thence north twenty rods to what is known by the name of the Kelly line thence west on said Kelly line to a small birch tree marked for a corner thence south twenty three rods to a stake and stones standing on Tisdale Porter north line thence east 3½ degrees north on said Porter's line fifty rods and ten links to the place of beginning containing six acres 115 rods of ground." The Townsend property lies directly east of the Clark lot and the Chancellor finds that it cannot be a part of the easterly boundary of the Wheelock lot, the deed so describing it being erroneous in this respect.

The defendant Alba M. Bragg is the owner of the Tisdale Porter land which lies south of the plaintiff's 45 Acre lot (the Wilbur and White property) and is described as bounded on the north and west by the Wilbur and White land. As to the other land described as part of the southern boundary of the 45 Acre

lot, stated to be owned by C. C. Fairbanks, no evidence was introduced of any record title of Fairbanks to land in that locality, and the Chancellor is unable to find where it is situated.

The Chancellor viewed the premises and has found that the Kelly line is marked by a line of stone piles beginning on the easterly side of the old Athens-Grafton road, and extends westerly along the northerly boundary of the Townsend and Clark lots to and beyond a point 23 rods northerly from a stake and stones marking the southwest corner of the Clark lot. The point at which the stone piles commence at the easterly side of the road just mentioned is the north east corner of the Townsend lot. The Wheelock lot, now owned by the plaintiffs, lies north of the Clark and Townsend lots. The Chancellor is unable to find who owns a small piece of land situated between the westerly boundary of the Clark lot and the easterly boundary of the 45 Acre lot, but does find that the defendant Bragg does not own or claim to own it.

It is found that the plaintiffs own no land southerly of a line extending from the stake and stones at the southwesterly corner of the Clark lot westerly, in part along the location of an old brush fence, to a point a little southerly of the end of a wall on the westerly boundary of the 45 Acre lot, and that the defendant Bragg's property does not extend northerly of this line at that location. It is also found that the defendants have not trespassed upon either the Wilbur and White lots or on the Wheelock lot.

The plaintiffs contend that the Chancellor has made findings of boundaries not involved in this litigation, having to this extent exceeded his jurisdiction, and ask that these findings may be stricken from the record. The specific findings thus attacked are concerning the southern boundary of the Wheelock lot and the southwest corner of the Clark lot; the location of the Kelly line; and that the defendants have not trespassed upon the Wheelock lot. The basis for the claim is that since the cutting sought to be enjoined is alleged to be on that part of the Wilbur and White property known as the 45 Acre lot, the boundary between that lot and the Tisdale Porter property, now owned by the defendant Bragg, is the only line in issue.

██ It is true, that in the absence of some ground for injunctive relief such as irreparable damage or threatened trespasses, "it is not the business of equity to try titles to real estate and the

existence of a dispute as to the boundary between adjoining lands does not alone afford sufficient ground for a court of equity to ascertain and fix the boundary." *Aguirre* v. *Aja,* 113 Vt 123, 124, 30 A2d 88, 89; *Watkins* v. *Childs,* 79 Vt 234, 236, 65 A 81. But this principle does not preclude the Court from finding such lines and landmarks relating to adjacent property as have a bearing upon the disputed boundary. In this case the location of the Kelly line and the southwest corner of the Clark lot were material to the ultimate finding of the boundary in issue. The surveys of both plaintiffs and defendants agreed in making the Kelly line the northern boundary of the Clark lot, the controversy being as to its location on the ground. The southwest corner of this lot is found to be 23 rods south of the Kelly line, as called for in the deed, and to be indicated by a monument, from which a line drawn westward, in part along the remains of an old fence, is the limit north of which the defendants' property does not extend. We see no impropriety in these findings which are of subordinate facts upon which the Chancellor has rested his ultimate finding. The extent to which such subordinate facts may be reported lies in the sound discretion of the trial court. *Waterman* v. *Moody,* 92 Vt 218, 235, 103 A 325. It is, on the whole, the better practice to report them. *Allen's Admr.* v. *Allen's Admrs.,* 79 Vt 173, 186, 64 A 1110; *Winship* v. *Waterman,* 56 Vt 181, 185.

■ But there is no claim of threatened trespasses upon the Wheelock lot and no injunction is sought as to any acts committed thereon, and the plaintiff's position in this regard was made clear at the hearing. There is said to be an action at law pending between the present parties to recover damages alleged to have been sustained by previous cutting of timber on this property but this proceeding has nothing to do with the case before us. The southern boundary of the Wheelock lot has no perceptible bearing upon the issue here presented. The finding with regard to it and the finding that the defendants have not trespassed upon this parcel of land are clearly of matters not in issue and are immaterial. They need not be stricken from the record. The plaintiffs are not prejudiced by them since they can be disregarded without affecting the result of the material findings. *Waterman* v. *Moody,* 92 Vt 218, 236, 103 A 325; *Crampton* v. *Lamonda,* 95 Vt 160, 164, 114 A 42. Exceptions to immaterial findings are not for consideration. *Valiquette* v. *Smith,* 108 Vt 121, 129, 183 A 483;

*Dunn* v. *Williams,* 107 Vt 447, 453, 181 A 131; *University of Vermont* v. *Wilbur's Est.* 105 Vt 147, 174, 163 A 572; *Houghton* v. *Grimes,* 103 Vt 54, 65, 151 A 642; *Murphy, Ex'x,* v. *McMahon,* 100 Vt 86, 88, 135 A 3; *Hall* v. *Windsor Savings Bank,* 97 Vt 125, 140, 121 A 582, 124 A 593; *Platt, Adm'x,* v. *Shields and Conant,* 96 Vt 257, 268, 119 A 520.

Twenty-one exceptions have been taken to the findings of fact and all but two of them are grouped in the plaintiffs' brief under the general caption that the Chancellor "erred in failing to give weight to the particular descriptions in both the plaintiffs' and the defendants' title deeds and in giving undue weight to certain general descriptions." The brief goes on to say: "The pertinent descriptions in the deeds in the plaintiffs' chain of title are outlined fully in the plaintiffs' memorandum of points (filed with the Chancellor at the hearing) and requests for findings on (certain numbered pages) of the plaintiffs' bill of exceptions. We are not, therefore, repeating the same in this brief." The nineteen exceptions are mentioned only by a series of numbers, and with the assertion that they should all be sustained.

 This is inadequate briefing. In order to present the issue to this Court the particular conveyances relied upon must be identified and the specific bearing of each upon the question must be pointed out. The memorandum used in connection with requests for findings in the trial court is no part of the brief. We will not search the record to find grounds upon which to predicate error. *Utley* v. *School District,* 110 Vt 522, 528, 9 A2d 117; *Gould* v. *Gould,* 110 Vt 324, 331, 6 A2d 24; *Johnson* v. *Moore,* 109 Vt 282, 288, 196 A 246; *Butler, Adm'r,* v. *Favreau,* 105 Vt 382, 384, 166 A 1; *Town of Brattleboro* v. *Carpenter,* 104 Vt 158, 175, 158 A 73; *Higgins* v. *Metzger,* 101 Vt 285, 297, 143 A 394.

We have, however, examined the claim as far as presented by the brief. It is said that the Chancellor has disregarded the descriptions in the deeds which bound the 45 Acre lot on the south by lands of Tisdale Porter and of C. C. Fairbanks. As we have seen, no evidence was introduced concerning the locations of the Fairbanks property and the Chancellor has made no finding regarding it. He has, however, established the northern line of the Tisdale Porter land, and has found that no trespass has been committed on the 45 Acre lot. This finding makes unnecessary any more

precise determination of the southern limit of the plaintiff's property.

It is also contended that the Chancellor has disregarded the description of the Tisdale Porter lot in the defendant's title deed, which calls for a western boundary on the Wilbur and White property. But the northern boundary as it abutted upon the 45 Acre lot was the line in issue. This was all that was necessary to be found. Any other finding would have been immaterial. We can not assume that the description was not given due attention in making the findings.

Further it is said that the Chancellor has apparently disregarded evidence showing that the defendant's northern boundary is the northern boundary of lot 24 shown on the original plan of the town of Athens, which plan is an exhibit. All that is said concerning this claim is "for full chain of title see Plaintiffs' memoranda of points and requests for findings." The brief cites no testimony tending to show where lot 24 was situated on the ground. In the absence of a more explicit presentation of this contention, we must assume, the contrary not appearing, that the Chancellor considered all the evidence bearing upon the point (*McClary* v. *Hubbard,* 97 Vt 222, 237, 122 A 469), and that he made no improper use of it. *Raithel* v. *Hall,* 99 Vt 65, 74, 130 A 749.

It has not been made to appear that the Chancellor has disregarded or misconstrued evidence of any fact material to the issue. The burden is on the excepting party to show harmful error and the risk of failure is upon such party. *Higgins, Adm'r* v. *Metzger,* 101 Vt 285, 296, 143 A 394; *Biow Co.* v. *Cohen,* 99 Vt 78, 80, 130 A 589, 52 ALR 586; *Wood* v. *James,* 93 Vt 36, 43, 106 A 566.

By two exceptions, which are alike in substance, the plaintiffs challenge the findings as to the location of the Kelly line upon the ground that they are without support from the records introduced in evidence. It is urged that the blue print plan, showing the various parcels of land, and the Kelly line, introduced in evidence by the plaintiffs is based upon uncontroverted evidence and should have been found to be a correct representation of the premises. Hence, that the plan prepared by the defendant's surveyors, which was totally at variance with the former exhibit and which was adopted by the chancellor should have been rejected.

The only record to which the brief refers in this connection is a copy of the original charter of the town of Athens, dated in 1780, which places the then north line (the Kelly line) as commencing one mile approximately north from the northwest corner of the town of Westminster, and the only testimony mentioned is that of the plaintiffs' surveyor as contained in four numbered pages of the transcript. The witness said that he found a pile of stones which he took to be the northwest corner of Westminster and, proceeding in a northerly direction for something over a mile, he came upon a stone, which the defendants claim is the eastern end of the Kelly line. But his testimony on cross examination tended to throw doubt upon the authenticity of the stone pile as marking the corner, and the stone as indicating the Kelly line. Although a survey of the boundary between Westminster and Athens, made in 1841, under Legislative authority (See Acts 1839, p. 85) places the northwest corner of Westminster at a stake and stones erected at the time of the survey six miles west 10 degrees north of the north bank of Saxton's River where it empties into the Connecticut River, no testimony has been called to our attention, and in our examination of the voluminous transcript we have found none, tending to show that the plaintiffs' surveyor ran this line in order to discover whether the stone pile he assumed to be the corner was in fact the one placed there in 1841. Besides, the witness assumed the width of the Gore to be from 112 to 115 Rods, while a record introduced by the defendants gave the width as 55 Rods. This measurement, which was adopted by the Chancellor, placed the Kelly line, and consequently the southern boundary of the 45 Acre lot, considerably farther north than the plaintiffs claimed it to be. We do not consider that the finding of the Chancellor was without evidentiary support.

Another exception "to all of the findings of the Chancellor which are inconsistent with the record title introduced by the plaintiffs and with the evidence introduced by the plaintiffs which has been uncontroverted" is clearly too general and indefinite to require attention. *Bemis* v. *Aldrich,* 102 Vt 277, 278, 147 A 693 ; *Royal Bank* v. *Girard,* 100 Vt 117, 119, 135 A 497.

An exception was taken to a finding that at the time that the view was taken there were no brush fences appearing on the line claimed by the plaintiffs to be their southern boundary, and no

testimony was introduced showing that there were any fences there at the time of the hearing. The claim is that there was ample testimony that such fences were originally there, and that these fences were maintained until the death of Alexander Turner in 1925. The only reference to the transcript is to the testimony of "Daisy Turner and her sisters." This method of briefing is not in compliance with Supreme Court Rule 8, para. 5, which provides that: "Briefs shall contain specific reference to such parts of the evidence as may be deemed material, giving the page and the number of the interrogatory and answer as marked on the copy of the testimony furnished to the Court." Failure to comply with this rule causes us to refuse to consider the point thus attempted to be raised. *Dunn* v. *Williams*, 107 Vt 447, 453-4, 181 A 131, and cas. cit. As we have said, we do not search the record to discover error.

Aside from this, the exception does not apply to the finding, which relates to the absence of the fences at the time of the view and the hearing, and not to a previous date.

The findings mention that a proposed amendment to the bill of complaint was filed and subsequently withdrawn. An exception was taken, and it is argued that the Chancellor had no authority to give any weight to the amendment. It does not appear that he did so, and the exception is unavailing.

Under another exception the plaintiffs assert that the Chancellor must have forgotten their position with reference to the location of their boundary lines. Here, again, the contention is not substantiated. The adverse finding as to the line in question does not show that the plaintiffs' claims were given no consideration. The bare assertion that the record title required a finding in accordance with what the plaintiffs desired, in the absence of specific references to exhibits and testimony showing the situation of the various parcels of land upon the ground, does not make error to become manifest.

The plaintiffs offered in evidence a declaration of Vestus A. Wilbur, deceased, a former owner of the White and Wilbur property, regarding a brush fence claimed to mark its southern boundary. The offer was excluded subject to exception.

While the declarations of deceased persons regarding boundaries may, under certain circumstances, be received in evidence (*Wood* v. *Willard*, 37 Vt 377, 390, 86 Am Dec 716; *Powers* v. *Silsby*, 41 Vt 288, 292; *Miller* v. *Wood*, 44 Vt 378, 381; *Hadley* v. *Howe*, 46 Vt 142, 143; *Martyn* v. *Curtis*, 68 Vt 397, 399, 35 A 333;

*Turner Falls Lumber Co.* v. *Burns,* 71 Vt 354, 355-6, 45 A 496;
*Davis* v. *Moyles,* 76 Vt 25, 34-40, 56 A 174; *Hathaway* v. *Goslant,*
77 Vt 199, 213, 59 A 835; *Taylor* v. *Henderson,* 112 Vt 107, 119,
22 A 2d 318), it must appear that they were made before a con-
troversy had arisen in respect to the boundary, *Putnam* v. *Fisher,*
52 Vt 191, 196, 36 Am Rep 746. It is not enough that the suit was
not pending at the time; it is sufficient to render the declarations
inadmissible that a dispute had arisen capable of being litigated,
*Davis* v. *Moyles,* 76 Vt 25, 40-1, 56 A 174.

█ It was for the plaintiffs to show the absence of such a con-
troversy, and the statement in the offer that at the time the declara-
tion was made suit had not been brought did not suffice. In fact,
there was evidence justifying the ruling. The declaration was
made in October, 1934, and certain exhibits in the case, letters be-
tween the parties and counsel, tend to show that the line was in
question as early as 1928. The exception is unavailing.

█ Two declarations by David Brockway, deceased, made in
July, 1938, were also offered. Both were excluded and the plain-
tiffs excepted. One of these had no relation to the location of the
boundary and so was inadmissible for this reason. See *Taylor* v.
*Henderson, supra.* The other is subject to what has been said re-
garding the declaration of Vestus Wilbur; and, indeed, the ruling
may be upheld on the ground that there has been no evidence called
to our attention tending to show that the declarant had actual or
inferable knowledge of the boundary dehors the declaration. Such
knowledge cannot be proved by the declaration itself. *Hadley* v.
*Howe,* 46 Vt 142, 143; *Turner Falls Lumber Co.* v. *Burns,* 71 Vt
354, 355, 45 A 896; *Davis* v. *Moyles,* 76 Vt 25, 39-40, 56 A 174.
The exception is not sustained.

The plaintiffs took exceptions to the admission of deeds and
testimony, offered by the defendants, relating to property at a
distance from the scene of the dispute. The only reference in the
brief to these exceptions is that they appear on certain pages of the
transcript, which, under our rule, is not sufficient to warrant their
consideration. *Barclay* v. *Wetmore and Morse Granite Co.,* 94 Vt
227, 234, 110 A 1; *West Rutland Trust Company* v. *Houston,* 104
Vt 204, 209, 158 A 69, 80 ALR 664. Moreover, all that is said by
way of argument is that the exhibits were inadmissible because a
proper construction of the deeds in dispute did not require evidence
of deeds of distant properties. This, alone, is inadequate briefing,

being no more than a statement that the rulings were error. *Paska* v. *Saunders,* 103 Vt 204, 213, 153 A 451; *Johnson* v. *Hardware Mut. Casualty Ins. Co.* 109 Vt 481, 496, 1 A2d 817. It amounts to a waiver of the exceptions. *State* v. *Wood,* 99 Vt 490, 498, 134 A 697, 48 ALR 985.

Two other exceptions were taken on trial. Each is identified in the brief merely by the page of the transcript upon which it appears. As to one it is said that "it was quite apparent that the witness testifying was not qualified to offer an opinion on the subject matter on which he was testifying and the evidence should have been excluded." As to the other, that the exception "refers to the refusal of the Chancellor to strike out certain deeds. These deeds should have been stricken out and the plaintiffs' exception should have been sustained." The briefing in both instances is clearly inadequate. See cases cited above. For this reason we have given them no attention.

The brief and such references to transcript and the exhibits as it contains have been carefully examined and no harmful error has been made to appear.

*Judgment affirmed.*

## ON MOTION FOR REARGUMENT

MOULTON, C. J. The plaintiffs' motion for reargument is in effect a request that they may be permitted to file another brief in which the exceptions which have been held to be inadequately briefed will be presented in such a manner as will conform to our practice and Rules of Court. The writer of the original brief, a member of the Massachusetts bar, takes upon himself the responsibility for whatever deficiencies have been found therein, giving in excuse his lack of familiarity with the Rules of this Court and the settled procedure on appeal, and his erroneous assumption that we would examine the entire record and make such findings of fact and law as the record requires, not being bound by the findings of the trial court.

In the exercise of our appellate authority, we pass only upon such issues as have been raised by proper exceptions which have been taken below and are adequately briefed here. As we pointed out when this cause was here before (*Turner* v. *Bragg,* 113 Vt 156, 159, 160, 30 A2d 450) our jurisdiction in equity is

statutory, in accordance with which we sit in error only and have no jurisdiction to act as a higher court of equity. *White River Chair Co.* v. *Conn. River Power Co.,* 107 Vt 519, 524, 181 A 284; *Westinghouse Co.* v. *Barre and Montpelier Trac. Co.,* 97 Vt 306, 313, 123 A 201; *Hitchcock* v. *Kennison,* 95 Vt 327, 334, 115 A 156; *Alfred* v. *Alfred,* 87 Vt 542, 544, 90 A 580. The findings of the trial court are to be given the standing of a verdict expressly approved by that court. *Platt, Admx.* v. *Shields and Conant,* 96 Vt 257, 271, 119 A 520; *Cook* v. *Holden,* 113 Vt 409, 35 A2d 353. The extent of our inquiry with regard to such findings is whether there is evidence reasonably tending to support them. *Putnam* v. *Woodward,* 111 Vt 39, 41, 10 A2d 186; *Spaulding* v. *City of Rutland,* 110 Vt 186, 195, 3 A2d 556. The weight and credibility of the testimony are for the trier of fact, not for us, to determine. *Crawford* v. *Bromley, Adm.,* 108 Vt 51, 53, 182 A 180; *Patch* v. *Squires,* 105 Vt 405, 411, 165 A 919; *Farmers' Exchange* v. *Lowney Co.,* 95 Vt 445, 452, 115 A 507. These principles have long been established and have been often announced and applied in our decisions. They are not, as the motion asserts, "technicalities."

Supreme Court Rule 8, para. 5, which requires specific reference, by page and interrogatory, to evidence deemed material, has been in force for many years, and the necessity of a regard for its provisions has been repeatedly emphasized. See *Dunn* v. *Williams,* 107 Vt 447, 453-4, 181 A 131; *Bloomstrand* v. *Stevens,* 104 Vt 1, 5, 156 A 414; *Travellers' Ins. Co.* v. *Evans,* 101 Vt 250, 258, 143 A 290; *Vermont Box Co.* v. *Hanks,* 92 Vt 92, 101, 102 A 91. It appears, moreover, that a similar rule (Rule 2-A) has been adopted by the Supreme Judicial Court of Massachusetts.

■ It is the general rule that the failure adequately to present a case does not, in a court of last resort, afford a ground for granting a rehearing. *Cunningham* v: *Blanchard,* 85 Vt 494, 501, 83 A 469; *Rice* v. *Bennington Savings Bank,* 93 Vt 493, 512, 108 A 708.

It may be added that a further examination of the record fails to convince us that an injustice has been done to the plaintiffs in the findings of the trial court.

■ In the argument on the motion the plaintiffs insist that the northern boundary of the defendants' land is not where they assert the Chancellor has put it, but is much farther to the south and is not a straight line. The Chancellor made no definite find-

ing as to this line, stating only that the defendants owned nothing north of a certain limit, and the plaintiffs nothing south of it, and that no trespass had been committed upon the plaintiffs' property. The plaintiffs say that the so called Fairbanks land, described as forming a part of their southern boundary, lies between their property and that of the defendants for almost the entire distance. As we have seen the Chancellor is unable to find where the Fairbanks land is situated, since no evidence of any record title to it was produced. So, even if we assume that the defendants' line is where the plaintiffs say it is, still in the absence of a finding as to the location and limits of the Fairbanks land, it is not made to appear that the area upon which the defendants have cut and threaten to cut timber is on the plaintiffs' lot. The plaintiffs must, of course, recover on the strength of their title and not upon the weakness or invalidity of the title of the defendants. *Judd* v. *Chilson*, 163 NYS 695, 696; *Gray Lumber Co.* v. *Harris*, 8 Ga App 70, 68 SE 749, 752.

*Motion for reargument denied. Let full entry go down.*