# Walter A. Scott Et Als v. Ruth Leonard Et Al

[119 A2d 691]

May Term, 1955.

Present: **Jeffords, C. J., Cleary, Chase and Hulburd, JJ., and Shangraw, Supr. J.**

Opinion Filed January 3, 1956.

*Paul R. Rexford, Rudolph J. Daley* and *Henry Lawlor* (of the Massachusetts bar) for the defendants.

*Waterman & Downs* and *Witters, Longmoore & Akley* for the plaintiffs.

**Cleary, J.** This is a suit in chancery brought by plaintiffs Walter A. Scott and Clarice S. Scott. The bill of complaint alleges the plaintiffs' record title to certain premises in the town of Westmore and that the defendants own certain other lands in said town, so located that a roadway referred to in plaintiffs' title crosses the defendants' land. The bill of complaint also alleges that the said roadway has been used by the plaintiffs and their predecessors in title under a claim of right, both by deed and by continuous user and possession adverse to the defendants, and that the defendants have interfered with the plaintiffs' use of the roadway constituting trespass. The bill prayed that both temporary and permanent injunctions issue to prevent continued trespass.

A temporary injunction was issued. George S. Trefren, Elwin N. and Effie T. Blake, Marion G. Redfield and Frank O. Morang later entered as parties plaintiffs, and either filed bills of complaint or adopted the bill of the original plaintiffs or did both.

The defendants answered denying record title and adverse possession by any plaintiff, and denying any trespass or unlawful use of the roadway by the defendants. By way of cross bills the defendants claimed record title to said roadway and title by adverse possession. They alleged that the plaintiffs were trespassing and interfering with the defendants' legal use of the roadway, and prayed for an injunction restraining the plaintiffs from further interference and for damages. All the plaintiffs filed answers to the defendants' cross bills. Before the hearing of the case the plaintiffs Blake discontinued.

Hearing was had, findings of fact were made and filed, and a final decree made and filed enjoining the defendants from hindering or interfering with the use by the plaintiffs, in common with the defendants, of said roadway and dismissing the defendants' cross bills. The case is here on the defendants' exceptions to the findings of fact, to the failure to find as requested and to the decree. The plaintiffs base their claim on their title of record and the location and establishment of the right of way by long use and occupancy. They now make no claim that they have acquired the right by adverse possession so we shall make no further mention of that phase of the case. The defendants claim the exclusive right to the roadway both by their title of record and by adverse possession.

Among the facts found by the chancellor are the following. The driveway in suit lies between the shore line of Willoughby Lake in the Town of Westmore and U. S. Route 5A, running generally in front of cottages of the plaintiffs parallel to U. S. Route 5A, a distance of some three hundred feet, and then takes an easterly course through the defendants' land and premises to U. S. Route 5A. The source of title of all of the parties originates from their common grantors, F. H. and Ida Foster, who owned the area. It was known as "Foster's Grove", and also as "Edgewood Park."

The first deed in the title of the plaintiffs Scott and Trefren was from the Fosters to Sarah Edna Grant, dated October 22, 1898, and states: "it is hereby agreed that the spring on the north side of said lot shall be reserved by the said F. H. and Ida L. Foster for the use of the then users or all other parties or patrons of the said Fosters Grove and the said Sarah E. Grant is to have a right of way to the highway and the said Sarah E. Grant shall have a right to use water from the aforementioned spring at all times." The next deed is from Sarah Edna Grant to S. F. Bickford and states: "subject to all the reservations rights and privileges as is contained in said Foster's deed to me." The next deed states: "and any right or privileges which may have been gained or used in connection therewith."

The first deed in the title of plaintiffs Redfield and Morang was from the Fosters to Nettie M., Lela and Carl P. Ford, dated August 26, 1896. It states: "The aforesaid parties are to have the right to use water from the springs and wells and a right of way to the highway."

The defendants acquired their property in two parcels, the first, called the Stiles Property, from Ava L. Peene by deed dated May 2, 1935, and the second from Florence G. Taplin, Admx., Susie R. Taplin Est. and Etta G. Rowell by two deeds, dated June 29, 1936. The first deed in the defendants' chain of title is from the Fosters to Susie Taplin and Etta Grant Rowell, dated April 16, 1901, and states: "This conveyance is made and accepted, subject to all subsequent conveyances of certain parts or parcels of the above described lands and premises and the said last mentioned conveyances are hereby excepted and named as follows to wit: the said Ida L. Foster and her husband F. H. Foster to the following named parties: Nettie Ford and others dated August 26, 1896, S. E. Grant dated October 22nd, 1898. Together with all rights, privileges and easements, restrictions and limitations mentioned and contained in the conveyances last mentioned as aforesaid." The next deed in defendants' chain of title was from Taplin and Rowell to W. B. Stiles and described the property conveyed as seven lots in Edgewood Park known as Foster's Grove. This included the so-called "Stiles proper-

ty" which was deeded to the defendants by Ava L. Peene by deed dated May 2, 1935. The last two deeds to the defendants are of land adjoining the Stiles property, are dated the same day, June 23, 1936, and each conveyed a one-half interest in the property to the defendants. In the description each of these two deeds mentioned the grove and later stated: "Reservation is hereby made in this conveyance of any and all rights of travel given or accrued over said roadway into grove above mentioned." The chancellor then found further facts as follows:

7. The Court finds that the right of way referred to in the deed of F. H. and Ida L. Foster to Sarah E. Grant in the conveyance set forth in section (1) of Paragraph 4 of these Findings was specifically undefined in that conveyance. It has been located and established on the ground by the "users or all other parties or patrons of the said Foster's Grove and said Sarah E. Grant" and her successors in title in the location where it now stands intersecting the property of the Defendants herein.

8. Rights of travel over the roadway were specifically reserved in the conveyance to these Defendants of the second parcel acquired by them as described in Sections (8) and (9) above (of Finding No. 3.).

9. The Court finds that the conveyances to the Defendants upon which they predicate their title did not grant unto them the right to the exclusive use of the subject roadway.

10. In the early 1900's "Foster's Grove" was a well known resort area in the Town of Westmore. It was extensively used by the general public as a recreation area. Along the general location in suit there was a grocery store to the east situated between the roadway and the present location of U. S. Route 5A. Westerly of the roadway and on the Lake shore was a stone pier which was used as a landing area for a lake steamer known as the "Keewaden" operated by one Capt. Averill. During daily excursions of the steamer it docked at the stone pier for the embarkation and debarkation of excursioners. The general public traveled on and over

the roadway here in suit as a means of ingress and egress to "Foster's Grove."

11. The northerly entrance to the Grove was gained by traveling through the lands of the Defendants Leonard's predecessors in title. The road extended southerly below the respective properties of the parties, bearing to the east and joining the main highway now U. S. Route 5A through rows of cottages. During the summer season the roadway was in constant use by teams and a stable was erected in the Grove for the stabling of horses and carriages carrying people to and from the resort area.

12. The Defendants' predecessor in title, Ava L. Peene, permitted the open and continued use of the roadway through her property during the period from 1925 to the date of the conveyance to the Defendants.

13. Ava L. Peene, during her ownership of the Stiles property, never laid claim to the roadway.

14. The roadway described in Paragraph 1 of these Findings is the only roadway that was generally used as a means of entering and departing from Foster's Grove at its northern area during the period from 1901 to 1935.

15. Immediately upon the acquisition of the Stiles property by the Defendants Leonard and on advice of their counsel, the late Edwin A. Cook of Barton, the defendants undertook to extinguish any right in the roadway through the Stiles property by adverse possession. On April 30, 1935 the Defendants undertook to exclude all users of the roadway and to hold it against the world. The Defendants made extensive repairs to the Stiles property and used it as a principal source of income by way of rentals to summer vacationers. In 1936 they added to their holdings by acquiring lands easterly and southerly of the property acquired from Ava Peene, encompassing an extension of the roadway from a small brook that intersects the driveway.

16. In 1937 the Defendants built a cottage on this parcel referred to in the evidence as Cottage No. 14. The westerly side of this cottage was built to the edge of the roadway and

the steps of the cottage abut on the driveway. Along the southerly boundary and in the vicinity of Cottage No. 14 a parking area was created for the use of tenants of the Defendants' cottages. During the summer season vehicles owned by such tenants were left in the parking area. This parking space has been so utilized during the summer seasons from 1937 to the date of the temporary injunctive relief afforded the Plaintiffs. When the parking space was used as a motor park it had the effect of obstructing any and all vehicular passage over the roadway.

17. One T. V. Harris, common predecessor in title to Plaintiffs Scott and Trefren, was advised by Edwin A. Cook, counsel for the Defendants, that if he would assist in the repair of the drive and construct a sluice for the bridge that intersects the driveway approximately forty (40) feet north of the Defendants' south line, that they would permit him to use the roadway as a means of access to his property. Harris assisted in the repair and maintenance of the driveway and bridge and was permitted use thereof until June 23, 1936 when he commenced the construction of a new drive leading westerly from U. S. Route 5A intersecting the roadway in suit, south of the Defendants' south line. After the completion of the construction of the Harris driveway, the Plaintiffs and their predecessors in title made little or no use of the roadway but made extensive use of the Harris driveway, until June of 1949.

18. In June of 1949 Harris erected a gate across his driveway and excluded all traffic therefrom. Since the route of access was foreclosed to the Plaintiffs, the Plaintiffs commenced to enter their property through the driveway of the Defendants as an alternate route. The Defendants then undertook to prohibit all persons, including the Plaintiffs, from using this roadway from this time. "Harris took us (Defendants) to get counsel and was advised to put a padlock barrier across our driveway which we did July 19, 1949." (Plaintiffs' Exhibit 4)

19. The Defendants made improvements to the roadway and bridge, caused new gravel to be put in, and a bridge to

be reconstructed by widening the box sluice and graveling that area extending from Route 5A through the entire Stiles property.

20. The Defendants Leonard were present on the Stiles property during most of the summer season of the years from 1935 through 1951. The Defendants and their tenants maintained active watch against intruders on the highway and whenever vehicles undertook to make passage through the Stiles property and this fact came to the knowledge of the Defendants, such vehicles were halted and ordered off the property.

21. The Plaintiff George Trefren used the roadway not more than half a dozen times during the years 1945 through 1952. Two specific instances were brought to the attention of the Chancellor of use prior to 1952. One occasion of such use was in the fall of the year to remove a boat. The other instance was on an occasion when the Harris driveway was blocked by a parked automobile.

22. Elwin Blake, an original party Plaintiff in this cause, who later discontinued, acquired a camp property south of the Leonard property in 1946 from T. V. Harris. Blake used the roadway at least once a year from 1946 to 1951. On June 17, 1946 Blake was halted while driving over the roadway by Defendant Ruth Leonard. Miss Leonard told Blake if he wanted to use the roadway he would have to pay for it. Blake then informed Miss Ruth Leonard that he did not want to use the roadway. Subsequent to 1949 Blake discovered the roadway was blocked by a barrier whereupon he asked permission of the Defendants to use the roadway, offering to maintain the roadway in return for the Defendants' permission to use it. The Defendants denied Blake this permission and ordered him to stay out of the property. Blake thereafter acquired a piece of land which gave him access from his camp to Route 5A by way of foot travel. He subsequently conveyed his title to the camp property.

23. One H. C. Trefren, father of the Plaintiff George S. Trefren, made use of his son's camp property in 1946 to recuperate from injuries sustained in an accident. On this

occasion he walked over the Leonard roadway each day for a period of ten days. Subsequently and at intervals during the period 1946 to 1949 Trefren, Sr. walked over the roadway.

24. The Plaintiff Intervenor Marion Redfield used the roadway several times each year subsequent to 1935. In 1950 Miss Redfield used the Leonard roadway on one occasion but after having requested the Defendants to remove a car which obstructed her travel. On another occasion Miss Redfield asked permission of the Defendants to use the driveway to get in a load of gravel. The Defendants acquiesced in her request. The Defendants never directly and specifically forbid Miss Redfield from using the roadway.

25. After the Plaintiff Scotts acquired title to their camp property in 1944 they infrequently used the roadway under claim of right. While their principal means of access to their property was over the Harris driveway until its closure in 1949, on a few isolated occasions during the hunting season and in the spring they made use of the Leonard driveway. They made no use of the Leonard driveway during the summer months when the Leonards or their tenants were in occupancy.

26. The roadway was, however, used from time to time for service deliveries by Rawson Calkins who sold milk and ice to various occupants of the summer cottages on the roadway and Calkins accomplished deliveries on foot and by vehicle from time to time during the summer season covering the period from 1939 to 1942. In the course of Calkins' use of the road he sometimes entered through the Stiles property to the north and sometimes he made entrance from the southerly entrance. In using the roadway the bridge near the south line of the Defendants' property was badly sunken and at times was substantially impassable. However, Calkins was able to negotiate it by traveling slowly and in low gear.

27. One Raymond LaCrosse, a farmer and resident of Westmore, delivered milk through Foster's Grove for a period of twenty-one years. On occasions he traveled through the Stiles property until the roadway was closed by the erection of a fence and stone barrrier in 1951. Deliveries were accomplished by LaCrosse on foot and by motor truck across

the Leonard bridge. Approximately two years ago LaCrosse was ordered by the Defendants to cease using the roadway running through their property and he did not endeavor to gain access to the Grove through the Leonard property thereafter. During the period of time when LaCrosse used the Leonard driveway he was delivering milk to the Leonard sisters and continued on his way after accomplishing such deliveries.

28. During the years 1936 to 1939 one Edward Malcolm Pickle, a contractor and builder, used the roadway from U. S. Route 5A through the Leonard property in visiting campers at the south end of the Grove. During the year 1939 Pickle did work on the camp property of the late Fred Howland and traversed through the Leonard roadway by motor vehicle in going to and from the Howland job.

29. One Lionel H. T. Phipps, who operated a store on U. S. Route 5A, used the roadway approximately six times a season in the years 1946 to 1949 to deliver groceries to campers. In the year 1949 Phipps was stopped by the defendant, Ruth Leonard, an altercation ensued and Phipps did not use the property thereafter.

30. After 1949, at infrequent and isolated instances during the winter and early spring when the Defendants were not in residence at Lake Willoughby, various campers used the roadway on foot and in vehicle without the knowledge or the consent of the Defendants. Insofar as it was in their power to do so the Defendants foreclosed all traffic on and over the roadway extending through their property. Their absence from Lake Willoughby from time to time prevented an absolute exclusion of all traffic during the period of their ownership to the time of the hearing.

31. The Court finds that any use made of the roadway through the Defendants' lands was done against the will of the Defendants and without their consent, express or implied.

32. The Court further finds that during the summer season subsequent to the closing of the Harris driveway in 1949, the Plaintiffs and their guests did not openly use the driveway

through the Defendants' property, but left their vehicles on the main highway and gained access to their camps on and over foot paths from U. S. Route 5A. The only open use made of the Leonard property by the Plaintiffs subsequent to the closing of the Harris driveway in 1949 was after consent first obtained by the Plaintiffs from the Defendants Leonard.

33. With the exception of the assistance afforded to the Defendants by T. V. Harris all of the maintenance and repairs to the roadway and bridge prior to this proceeding have been done by the Defendants Leonard without assistance from the Town of Westmore or other outside help.

34. In 1949 the Defendants erected a chain barrier across the roadway, which chain barrier was padlocked. This was the first stationary physical obstruction erected across the driveway. In October 1949 the chain was replaced by a cedar pole. These barriers effectively excluded vehicular traffic over the roadway until May 8, 1952. At that time eight (8) large boulders were erected to reinforce the barrier already in place. In May of 1952 the large stone barrier was removed and the barrier broken down by the Plaintiffs Scott and Trefren. During the course of the reconstruction by the Defendants and the tearing down of the barrier by the Plaintiffs the instant proceedings were commenced and a temporary injunctive order was issued enjoining the Defendants from further obstruction of the roadway on May 29, 1952.

35. On April 30, 1935, the Defendants Leonard claimed no title to the roadway south of an iron stake located northerly of the bridge. The Defendants, however, intended to acquire exclusive right to the driveway southerly of the iron stake through the present bridge, by adverse user.

36. The Court finds that none of the Plaintiffs were notified that the Defendants claimed exclusive right to the use of the roadway until after T. V. Harris closed his driveway by the erection of a locked gate June 27, 1949.

37. While the Defendants Leonard have made a diligent and vigorous effort to accomplish an ouster of the plaintiffs and all other users from their rights of travel over the said

roadway, the Court finds that a constant and continuous ouster for a period of fifteen years has not been successfully maintained.

The defendants' exceptions raise three primary questions. 1. Does the right of way mentioned in the deeds from the Fosters to Sarah E. Grant and to the Fords in the various plaintiffs' chain of title run with the land or is it personal to the grantees in those deeds? 2. If the right of way runs with the land, have the defendants acquired sole title to the right of way by adverse possession and have they ousted the plaintiffs from their right to use it? 3. Is the decree supported by the pleadings and findings of fact? All other questions raised are merely incidental to these three primary questions.

The defendants have briefed their exceptions to paragraphs numbered 7, 8, 10, 11, 12, 18, 23, 24, 26, 27, 28, 29, 36 and 37 of the findings of fact. They claim number 7 is unsupported by the evidence because the plaintiffs Redfield and Morang were not successors in title to Sarah Edna Grant but were strangers to that deed. Redfield and Morang were strangers to the Sarah Edna Grant deed but paragraph 6 of the findings of fact, which was unexcepted to, states that Redfield and Morang acquired their title by virtue of the deed from the common grantors F. H. and Ida Foster to Nettie M. Lela and Carl P. Ford which granted them a right of way to the highway and which was excepted from the Foster's conveyance to the Taplins and Rowells, through whom the defendants were conveyed all the land which they claim.

The defendants also claim the deed to Sarah Edna Grant was personal to her and conveyed no rights or privileges to anyone except her, insofar as a right of way is concerned.

█ Our recent decision in *Sabins* v. *McAllister*, 116 Vt 302, 305, 306, 76 A2d 106, is directly in point and determines the question. That case states, at page 305, "the intent of the parties, to be gathered from the nature of the subject matter and the language used in the deed, must control. *Hill* v. *Shorey*, 42 Vt 614, 619; *Cooney* v. *Hayes*, 40 Vt 478, 482; Easements, 17 Am Jur., §810; Easements, 28 CJS, page 636 et seq." In the Sabins case, as here, there is nothing in

the relation of the grantors to the grantee, to each other, nor in the nature of the right in question, that shows it to be a mere personal right or that it was so intended. There is nothing to indicate that Sarah E. Grant had any personal interest in securing a right of way distinct from her interest as owner of the lot conveyed. A construction that an easement is one appurtenant rather than in gross is favored. The Sabins case holds and so do we in the present case that the right of way granted by the deed was legally appurtenant to the land conveyed and went with it to the grantee and her successors in title. *Sabins* v. *McAllister*, 116 Vt 302, 305, 306, 76 A2d 106. This is true also of the deed to the Fords, the original deed in the Redfield and Morang chain of title.

■ The defendants admit that a right of way, when not given definite location in a deed, may be located by use. They claim this use must be acquiesced in by the grantor at the time of the deed and for a long time thereafter; that the transcript is void of any testimony as to any acquiescence at the time of the deed or at any time; and that there is no evidence or finding that Sarah E. Grant, or her successors in title selected a right of way; therefore the right of way never became established, citing *Lafleur* v. *Zelenko*, 101 Vt 64, 141 A 603, but that case does not hold that the use must be acquiesced in by the grantor at the time of the deed. We must construe the findings to support the decree if we can reasonably do so. *Ward* v. *Lyman*, 108 Vt 464, 469, 188 A 892. We will assume, in support of the decree that the chancellor inferred such facts from those certified up as he ought to have or as he fairly might have done. *Vermont Motor Co. Inc.* v. *Monk.*, 116 Vt 309, 312, 75 A2d 671.

The land and premises of all the litigants and the disputed roadway are all located in what was known as "Fosters Grove" at the time of conveyance by the Fosters, their common grantor. Bearing in mind the deeds upon which the parties rely and the chancellor's findings numbered 7, 8, 9, 10, 11, 12, 13, and 14 we can reasonably assume that the chancellor inferred that the Fosters and their successors in title used and acquiesced in the use of the roadway in question and that it

was located and established in 1901 when the defendants' land was deeded to their predecessors in title, or, at least, for many years before the defendants acquired their title. *Caslani* v. *Aiken*, 108 Vt 106, 107, 183 A 489.

■ The defendants also claim that even if the roadway was granted to the plaintiffs' predecessors in title it was abandoned when T. V. Harris bought the land southerly of the defendants and that T. V. Harris, in conveying to the plaintiffs Scott, and Trefren, conveyed no right of way of any nature or description. The defendants refer us to Finding No. 17. The deeds to and from Harris were all warranty deeds and conveyed not only the land mentioned in the deeds but all the privileges and appurtenances thereof to the grantees and to their heirs and assigns. The plaintiffs' easement was in existence on the date of the Harris deeds, was legally appurtenant to the land and so passed to the grantees by the deeds. *Sabins* v. *McAllister*, 116 Vt 302, 306, 76 A2d 106, and cases there cited.

■ The defendants claim the plaintiffs lost their right of way over the defendants' land by non-user and abandonment when Harris built a driveway on his land in 1936 which the plaintiffs and their predecessors in title used until June of 1949 and in that interval made little or no use of the roadway in question. An easement created by deed is not extinguished by mere non-user, no matter how long continued. In order to establish an abandonment there must be, in addition to non-user, acts by the owner of the dominant tenement conclusively and unequivocally manifesting either a present intent to relinquish the easement or a purpose inconsistent with its future existence. *Nelson* v. *Bacon*, 113 Vt 161, 172, 32 A2d 140; *Sabins* v. *McAllister*, 116 Vt 302, 307, 308, 76 A2d 106. Finding No. 17, to which no exception was taken, does not show such intent or purpose. The defendants' exception to finding No. 7 is not sustained.

Finding No. 8 is excepted to on the grounds that the finding is unsupported by the evidence and that there is no evidence that the plaintiffs were given a right of way over the roadway in question by deed.

Finding No. 8 is supported by the language of the deeds to the defendants. For this reason and for the reasons we have stated in reference to finding No. 7 the exception to No. 8 is not sustained.

Finding No. 10 is excepted to on the grounds that it is vague, uncertain and indefinite; that it cannot support any inference or finding of the acquisition of any right of travel by the general public or the plaintiffs or their predecessors in title; that it is inconclusive; that it does not show when the general public traveled over the roadway in question and when such use ceased; that the plaintiffs acquired no rights by the travel found in Finding No. 10. Finding No. 11 is excepted to on the ground that it is immaterial, irrelevant and can form no basis upon which the plaintiffs can predicate any right to use the roadway in suit.

Findings numbered 10 and 11 show the use of the roadway in question by the general public in the early 1900's. These findings tend to show the location and establishment of the roadway. They are material and relevant to the issues so the exceptions to them are not sustained.

The exception to finding No. 12 is on the grounds that the finding is unsupported by and contrary to the evidence. The finding is supported by the testimony of witnesses Morris Pickle, Percival Daniels and Raymond LaCrosse and by findings numbered 13 and 14 which were unexcepted to so the exception to No. 12 is of no avail. Finding No. 18 is made harmless to the defendants by finding No. 32 in their favor so the exception to No. 18 need not be considered.

Finding No. 23 is supported by the uncontradicted evidence of H. C. Trefren and that is the extent of our inquiry in regard to a finding of fact. *Spaulding* v. *City of Rutland,* 110 Vt 186, 195, 3 A2d 556; *Turner* v. *Bragg,* 113 Vt 393, 405, 35 A2d 356. The finding is based upon evidence not excepted to when received so the exception is without merit. *Loeb* v. *Loeb,* 118 Vt 474, 488, 114 A2d 518.

The claim that Finding No. 24 is against the great weight of the evidence cannot be decided by us because the weight of the evidence was for the chancellor to determine.

*McClary* v. *Hubbard*, 97 Vt 222, 242, 122 A 469; *Holton Estate* v. *Ellis*, 114 Vt 471, 488, 49 A2d 210; *McPherson* v. *Dow*, 117 Vt 506, 508, 96 A2d 649. All other claims made by the defendants in their brief concerning finding No. 24 were not raised below so they are not available here. *Chevalier* v. *Tyler*, 118 Vt 448, 455, 111 A2d 722; *Hanley* v. *United Steel Workers*, 118 Vt 378, 380, 110 A2d 728; *Robillard* v. *Tillotson*, 118 Vt 294, 302, 108 A2d 524.

The defendants have grouped together their exceptions to findings numbered 26, 27, 28 and 29. They claim the findings could not form a basis for a legal right of way because the use was by tradesmen and not with reference to the rights of anyone, was by convenience and not under a claim of right, and the chancellor has not found that the use was under a claim of right. Previous findings were to the effect that the plaintiffs had the right to use the roadway in question under their titles of record and that the defendants' title did not grant them the right to the exclusive use of the roadway. So in order to prevail the defendants had to successfully prove their right to exclusive use by adverse possession. The findings now under consideration show the use of the roadway by business visitors to occupants of cottages along the roadway during the years 1936 to 1949. The importance of these findings is that such use was inconsistent with the defendants' claim of adverse possession and was consistent with the plaintiffs' right under their title of record. The only one of these findings to which the defendants excepted on the ground that it was unsupported by and contrary to the evidence is No. 29. This finding is supported by the uncontradicted evidence of Mr. Phipps, who testified to the exact facts which the chancellor found. The exceptions cannot avail the defendants.

The defendants brief their exception to finding No. 36 on the grounds that direct notice to the plaintiffs of the defendants' claim to the roadway was unnecessary because their possession was open and notorious and made under such circumstances that by the use of reasonable diligence the plaintiffs might ascertain the right and claim of the defendants, citing *Soule* v. *Barlow*, 49 Vt 329 and *Jangraw* v. *Mee*, 75 Vt

211, 54 A 189; that when possession is of such a character as to indicate to the owner that it is exercised as a matter of right, no notice of the possessor's claim is required to make it adverse, citing *Jangraw* v. *Mee*, 75 Vt 211, 54 A 189; and that, "in order to perfect title by adverse possession, it is not necessary that the true owner should have actual knowledge or notice of the claim of the possessor," quoting *Spencer* v. *Jennings*, 95 Vt 364, at 369, 115 A 270, 272. In the Spencer case the next sentence following the one quoted by the defendant states "It is enough that the possession is open and notorious under claim of title, whether the true owner knew the fact or not," citing the Jangraw case. The exact holding in *Jangraw* v. *Mee*, 75 Vt 211, at 213 and 214, 54 A 189, 190, is as follows: "It was not necessary for the defendant to show that she gave the plaintiff notice of her claim in words. It was sufficient if her occupancy and use were exclusive, open and notorious, and of such a character as would indicate to the plaintiff that she was exercising it as a matter of right. The evidence tended so to show, and it was for the jury to determine."

⬛⬛ Here the parties were tenants in common of the right to use the roadway. In such case this Court has stated the rule to be as follows: "If a co-tenant enter upon the whole or part of the common property, as he has a legal right to do, the law presumes that he intends nothing beyond an assertion of his right. In order to sever his relation as co-tenant, and render his possession adverse, it must be affirmatively shown that the other co-tenants had knowledge of his claim of exclusive ownership, accompanied by such acts of possession as were not only inconsistent with, but in exclusion of, the continuing rights of the other co-tenants, and such as would amount to an ouster as between landlord and tenant." *Sabins* v. *McAllister*, 116 Vt 302, 307, 76 A2d 106, 109; *Vermont Marble Co.* v. *Eastman*, 91 Vt 425, 465, 101 A 151; *Chandler* v. *Ricker*, 49 Vt 128, 131. Where an ouster is asserted by one who has held possession for or with his co-tenant the presumptions are against him and can only be overcome by some overt and notorious act or acts of an unequivocal character, indicating an assertion of ownership of the entire premises to the exclusion of the right of the co-tenant. *Waterman*

v. *Moody and Rogers*, 92 Vt 218, 233, 103 A 325. It is well settled that when one joint owner is in possession of the whole, the presumption is that he is keeping possession not only for himself but for his co-tenant, according to their several rights; and the other joint owner or owners have the right to so understand, until they have notice to the contrary. *Holly* v. *Hawley*, 39 Vt 525, 531; *Leach* v. *Beattie*, 33 Vt 195, 198, 199; *Roberts* v. *Morgan*, 30 Vt 319, 324, 325. The defendants argue that the plaintiffs could have ascertained that the defendants claimed said roadway if the plaintiffs had exercised reasonable diligence and refer us to findings 15, 16, 19, 20 and 22. The defendants rely on the following acts to indicate their claim that the plaintiffs are charged with knowledge of the defendants' adverse possession: they dug a ditch across the road; built a sluiceway; parked cars in the roadway; kept constant watch; stopped cars; repaired roadway; put up barrier. All of these acts are included in the facts found by the chancellor except the chancellor found that the watch kept was active, not constant. None of them are inconsistent with the continuing rights of the plaintiffs to the use of the roadway except the erection of the barrier in July 1949. This had no legal effect on the rights of the plaintiffs because at the time of the bringing of suit the barrier had been in existence only three years. The exception to finding No. 36 is not sustained.

The claims of the defendants under their exception to finding No. 37 are all disposed of by what we have held supra in considering the exceptions to findings numbered 7 and 36. The defendants cite *Plimpton* v. *Converse*, 42 Vt 712, in support of their claim that the continuity of an adverse occupant's possession will not be interrupted by entries, trespasses or intrusions by strangers where they are merely casual, etc. In that case this Court held at page 718 that there is a prima facie presumption that the owner's enjoyment of his own land is the exercise of his right to enjoy it and the burden is on the claimant by adverse possession to rebut it by showing a continuous or uninterrupted use for the requisite length of time. Finding No. 37 is the final paragraph of the findings of fact and the findings that precede it show that the defendants

104

failed *to* sustain their burden of proof. Two statements appearing in the defendants' brief are that "an adverse use is continuous when it is made without a break in the essential attitude of mind required for adverse use," and "The requirement means that there be no break in the essential attitude of mind required for adverse use rather than that the use be constant." Even though that view of the word continuous was adopted this did not relieve the claimants of the duty to show notice to or knowledge by the plaintiffs of the claimants' attitude of mind. Finding No. 37 is consistent with the findings which precede it and on which it is based so the exception is of no avail.

The defendants have briefed three exceptions to the failure of the chancellor to find as requested. The first request was: "The two deeds of June 23, 1936 encompass an extension of said roadway from the brook or creek to the southerly line of the land of the defendants which portion thereof the said defendants went into possession of on June 23, 1936. That said roadway in the year 1935 and year 1936 and for many years prior thereto was unusable and impassable." The first sentence of the request was in effect complied with by finding No. 3 (8) and No. 3 (9). *Greenough* v. *U. S. Life Ins. Co.*, 96 Vt 47, 51, 117 A 332. The defendants claim the evidence was undisputed that in the years 1935 and 1936 the roadway was impassable and unusable. The failure to comply with the request was supported by the evidence of Raymond LaCrosse that he had used the roadway every year for 21 years before the date of the hearing in September 1953 until the defendants put a chain and stones across the road two years before the hearing. Elwin Bailey testified he was acquainted with Foster's Grove and travelled the roadway continuously on foot, by team and by automobile until 4 or 5 years previous to the hearing. Edward Pickel testified he travelled over the roadway from 1936 to 1939. The request was inconsistent with findings numbered 27 and 28 which we have already held are without error so the refusal to find as requested was not error. *First Natl. Bank* v. *Laperle*, 117 Vt 144, 154, 86 A2d 635; 30 ALR2d 958; *Nelson* v. *Travelers Ins. Co.*, 113 Vt 86, 99, 30 A2d 75.

The defendants excepted to the failure to find that portion of a request reading as follows: "prior to the construction of said sluiceway, said roadway was swampy, muddy and wholly impassable for vehicular traffic." Their brief claims the request should have been complied with "because the evidence is ample and because it is undisputed evidence of the physical condition of the roadway at the time the defendants took possession thereof and is physical proof of the non-use of said roadway prior to its possession by the defendants." As we have demonstrated immediately above this exception is of no avail for the same reason.

Lastly, the defendants requested the chancellor to find "that prior to the acquisition by the said Scott, Trefren and Redfield of their property as aforesaid no cottage owners in the Grove used the driveway over the Defendants' property." The grounds of the exception to the failure to find in accordance with this request are that the request is based upon the undisputed evidence and that the request rebuts finding No. 7 that the roadway "has been located and established on the ground and said Sarah E. Grant and her successors in title in the location where it now stands intersecting the property of the Defendants." As we have held supra the plaintiffs have the right to use the roadway through their titles of record and an easement created by deed is not extinguished by mere non-user no matter how long continued. *Nelson* v. *Bacon,* 113 Vt 161, 172, 32 A2d 140; *Sabins* v. *McAllister,* 116 Vt 302, 307, 76 A2d 106. Moreover, the request to find is directly contrary to the evidence of Marion Redfield who testified that her father bought property in Foster's Grove with a cottage on it in 1902; that her father and she have owned it since then; that there was no other means of access to the vicinity of the Ford cottage from the time she became familiar with Foster's Grove in 1900; that the roadway was used by the cottage owners along the road, including the owners of the Ford cottage before she owned the Ford cottage, and was used by the owners of the Scott and Trefren cottages. So there was no error in failing to find in accordance with the request.

■ The only question raised by the exception to the decree is whether the decree is warranted by the pleadings and supported by the findings. *Laplante* v. *Eastman*, 118 Vt. 220, 228, 105 A2d 265; *Chevalier* v. *Tyler*, 118 Vt 448, 455, 111 A2d 722. From what we have said supra it is apparent that the decree is both warranted by the pleadings and supported by the findings. None of the defendants' exceptions are sustained. *Decree affirmed.*

Note: At the time this case was argued at the May term, 1955, it was assigned to Mr. Justice Chase. At the November Term, 1955, it was reassigned to Mr. Justice Cleary.