2006 VT 47

**James ROWE and Valerie Banschbach v. Michael LAVANWAY and Janet Lavanway**

[904 A.2d 78]

No. 05-043

¶ 1. May 30, 2006. Plaintiffs James Rowe and Valerie Banschbach appeal from the trial court's order, which found that defendants Michael and Janet Lavanway possessed a right-of-way across their property pursuant to the terms of an 1881 deed. They argue that the trial court erred in: (1) interpreting the 1881 deed; (2) rejecting their claim that their predecessor-in-interest had extinguished the right-of-way; and (3) concluding that automobile use was allowed on the easement. We affirm.

¶ 2. Plaintiffs and defendants are neighboring landowners in Jericho, Vermont. Defendants own a significant portion of acreage to the north of plaintiffs, and they claimed a right-of-way extending northerly from Palmer Lane across the easternmost lands of plaintiffs, terminating at and affording access to their meadow. In September 2002, plaintiffs filed a complaint against defendants, alleging that defendants had trespassed on their property by accessing the al-

leged right-of-way. Plaintiffs sought injunctive relief against any further trespass by defendants. A court trial was held, which included a site visit, and the court found in favor of defendants.

¶ 3. The court concluded that an appurtenant right-of-way had been created by an 1881 deed (from Eastman and Nutting to Brown) that was within defendants' chain-of-title. The deed provided in part:

> *Said Brown his heirs or assigns are forever to have the right to pass through other lands now owned by said Eastman and Nutting in the lane as it now is in passing to and from the land hereby conveyed to said Brown for all purposes whatever.*
>
> . . . .
>
> **We also hereby mean to convey to the said Brown the lane about thirty-feet wide on the southeasterly side of the land now occupied by Levi Nutting as a pasture and leading to land now and heretofore owned by said Brown, and bounded on the southeasterly side by land now belonging to Harmon Sherman's Estate. Said Brown agrees to put up all bars in the lane in passing to and from the land hereby conveyed.**
>
> To HOLD SAID GRANTED PREMISES WITH THE APPURTENANCES THEREOF FOREVER.

¶ 4. The court found that the passage cited above in bold constituted the description and grant of the right-of-way at issue, and the passage in small capitals was the deed's habendum. See *Kipp v. Chips Estate*, 169 Vt. 102, 104 n.1, 732 A.2d 127, 129 n.1 (1999) ("The habendum clause in a deed typically sets forth the estate to be held by the grantee. While the granting clause actively transfers the land from the grantor to the grantee, the habendum clause seeks to describe the type of title that has been granted."). The court rejected plaintiffs' contention that the absence of words of inheritance rendered the grant a mere personal license to Brown. The court explained that, although the words of inheritance had not been included in the granting clause or the habendum, the word "appurtenances" was included in the habendum. The court found that there were only two possible appurtenant easements in the deed — those created by the language italicized and bolded above. It concluded that both provisions created easements and each satisfied the criteria for an easement appurtenant because they served a parcel of land. The court thus found that to give meaning to the word "appurtenances" in the habendum, the parties must have intended both easements to be appurtenant to their respective parcels.

¶ 5. The court found its interpretation bolstered by the rule of construction that an easement appurtenant is favored over a personal easement. It explained that the right-of-way must be considered an appurtenance of the parcel for which it provided ingress and egress. As additional support, the court pointed to an 1883 deed from Eastman to Nutting, which described a parcel being conveyed as "bounded north by land of Rufus Brown, east by the lane running north to said Brown's land." The court thus concluded that the right-of-way had been created by the deed, it attached to the dominant parcel, and it had been transferred through defendants' chain-of-title.

¶ 6. The court turned next to plaintiffs' claim that their predecessor-in-title, an individual named Bortz, had extinguished the right-of-way. The court explained that to divest the holder of a dominant estate of his interest in an easement, the holder of the servient estate needed to

make clear its intention to work an ouster; it must be hostile, and it must consist of a clear and affirmative blocking of the right-of-way. In conducting its analysis, the court viewed the conduct objectively.

¶ 7. The court found that defendants' predecessor-in-title, an individual named Higgins, had asserted his right to use the right-of-way, and he had expressed this view to Bortz. Bortz did not believe that the right-of-way existed. At some point, Bortz installed a driveway that proceeded northerly down the right-of-way at issue and then curved westward toward Bortz's house. In the process, Bortz graded the land in dispute. The court explained that many years before Bortz's construction of the driveway, crude stone walls had been erected along either side of the lane. During construction, Bortz's excavator broke through the westerly stone wall at the curve of the path of the driveway. Some of the stones were placed along the outside of the driveway curve. The court found that the stones might have had the effect of tending to block use of the right-of-way or constitute an act hostile to passage along it. On a subjective level, however, the court found no evidence that Bortz directed his excavator to so place the stones, nor any evidence that the excavator knew of the potential dispute between Bortz and Higgins regarding the right-of-way. The court found that, more significantly, the stones did not remain in that position for very long. They interfered with snow removal, and with Bortz's permission, the stones were pushed over the edge of the driveway, and down into the gully that marked the continuation of the disputed lane.

¶ 8. The court explained that Bortz's creation of a driveway had resulted in a berm that impeded travel along the lane if one were coming from defendants' land to the north. The berm created a drop of perhaps three feet if one were coming from Palmer Lane. The court stated that, although the driveway and berm might constitute something of an impediment to ordinary auto travel, a vehicle with four-wheel drive could still access the route. The court noted that defendant Rowe had driven his Jeep up the driveway and onto the lane. The driveway had remained in place for well over fifteen years, perhaps more than thirty. The court found that the visual effect of the driveway and berm was precisely that — a level driveway and sloping base necessary to create the driveway from material found on the site. An objective observer would not view it as Bortz deliberately blocking access along the lane. The court concluded that the driveway construction should be considered for what it was — a driveway with a berm of earth necessary to support it. It explained that, although the berm might somewhat impede travel along the disputed lane, it was "nothing that a few yards of fill could not remedy." Its purpose was simply to create a driveway rather than to block the dominant estate. The court found that construction of the driveway would not have put Higgins on notice that Bortz was trying to oust him from his easement. The court therefore found that plaintiffs had not established ouster.

¶ 9. Finally, the court rejected plaintiffs' assertion that the lane could not be used for automobile travel. It concluded that because there had been no limitation on the grantee's use of the right-of-way in the 1881 deed, none should be imported. In reaching its conclusion, the court recognized that over time the possible use of the right-of-way had evolved from animal traffic to automobile use. Plaintiffs filed a motion for reconsideration, which was denied, and this appeal followed.

¶ 10. Plaintiffs first argue that the court erred in interpreting the terms of the 1881 deed. They assert that the deed did not create an appurtenant right-of-

way because the grant did not include words of inheritance. Plaintiffs maintain that the court erred in looking at the habendum clause when the granting language was clear. Plaintiffs further assert that the word "appurtenances" does not mean what the court found it to mean, and that the court erred in giving the word independent legal significance and effect. Even assuming that the term could be so interpreted, plaintiffs argue, the habendum would be inconsistent with the terms of the grant and therefore invalid. According to plaintiffs, the context of the full deed evinces the parties' intent to convey an easement for the exclusive benefit of grantee Brown. Plaintiffs find support for their position in the deed's imposition of a personal obligation on Brown to "put up all bars in the lane passing to and from the land hereby conveyed."

¶ 11. We reject these arguments. Our goal in interpreting a deed is to implement the intent of the parties. *Kipp*, 169 Vt. at 105, 732 A.2d at 129; see also *Barrett v. Kunz*, 158 Vt. 15, 18, 604 A.2d 1278, 1280 (1992) ("The character of an easement depends on the intent of the parties, as drawn from the language of the deed, the circumstances existing at the time of execution, and the object and purpose to be accomplished by the easement."). We look first to the language of the written instrument because we presume that it declares the parties' intent. *Kipp*, 169 Vt. at 105, 732 A.2d at 129. The parties' intent, "when ascertainable from the entire instrument, prevails over technical terms or their formal arrangement." *Id.* (quotations omitted). In interpreting a deed, we "read the entire written instrument as a whole, giving effect to every part so as to understand the words in the context of the full deed. In so doing, we construe the various clauses of the document, wherever possible, so that the deed has a consistent, or harmo-

nious, meaning." *Id.* (citations and quotations omitted).

¶ 12. In this case, the trial court concluded that the deed as a whole reflected the grantor's intent to convey an appurtenant easement. We agree. An appurtenant easement is one that serves a parcel of land rather than a particular person, and a construction that an easement is appurtenant is favored. *Barrett*, 158 Vt. at 18, 604 A.2d at 1280 (explaining that, in contrast, personal easements, or easements in gross, are intended only to benefit the holder, and they are usually created for a limited purpose and a limited duration); *Scott v. Leonard*, 119 Vt. 86, 98, 119 A.2d 681, 698 (1956) ("A construction that an easement is one appurtenant rather than in gross is favored."). We reject plaintiffs' assertions that the absence of the words of inheritance in the granting clause controls the interpretation of the deed. See *Kipp*, 169 Vt. at 105, 732 A.2d at 130 ("Although we agree that in some cases according priority to the granting clause over other deed language is appropriate, we stress that such priority is only an aid to determining the intent of the grantor, to be used along with other such aids."). We similarly reject plaintiffs' assertion that the deed's imposition of an obligation on Brown to "put up all bars in the lane" necessarily rendered the conveyance a personal license. This phrase does not conclusively demonstrate that Brown had any personal interest in securing a right-of-way distinct from his interest as owner of the lot. See *Leonard*, 119 Vt. at 97-98, 119 A.2d at 698 ("[T]here is nothing in the relation of the grantors to the grantee, to each other, nor in the nature of the right in question, that shows it to be a mere personal right or that it was so intended.").

¶ 13. As the trial court found, its interpretation of the deed gave meaning to the word "appurtenances." We reject plaintiffs' suggestion that we should give the term a different meaning from that iden-

tified by the trial court. With no evidence that the easement was personal to Brown or created for a limited purpose or duration, the intent of the parties to convey a way of ingress and egress to Brown's land is accomplished in the deed. Mindful that appurtenant easements are favored over easements in gross, we note that the trial court's interpretation is also consistent with the common understanding of the term "appurtenance." See Webster's Ninth New Collegiate Dictionary 98 (9th ed. 1985) (defining "appurtenance" as "an incidental right (as a right-of-way) attached to a principal property right and passing in possession with it"). When a term is unambiguous, we give it its plain meaning. See, e.g., *N. Sec. Ins. Co. v. Perron*, 172 Vt. 204, 209, 777 A.2d 151, 154 (2001) (Court gives disputed terms their "plain, ordinary and popular meaning"). The trial court did not err in finding that the deed established an appurtenant right-of-way.

¶ 14. Plaintiffs next argue that the trial court erred in concluding that they had not established ouster. They assert that Bortz's conduct was sufficiently hostile, pointing to evidence of a three-foot high pile of rocks and dirt in the middle of the lane, a barbed wire fence at the end of the lane, and Bortz's actions in personally preventing Higgins from using the lane on several occasions. Plaintiffs also argue that the trial court erred in requiring evidence of continuous "conduct" for a period of fifteen years rather than evidence of continuous "possession" of the right-of-way during that period.

¶ 15. We reject these arguments. To extinguish an easement held by a dominant estate, a servient estate must establish an ouster, which requires "open, notorious, continuous, hostile and adverse possession" of an easement maintained for fifteen years; "[t]he possession must be unequivocal and incompatible with possession and use by the dominant owner." *Percival v. Fletcher*, 121 Vt. 291,

296, 155 A.2d 737, 740 (1959); see also *Okemo Mountain, Inc. v. Town of Ludlow*, 164 Vt. 447, 452, 671 A.2d 1263, 1268 (1995) (same). To start the prescription period, the one claiming ouster must show that it acted "clearly wrongful as to the owner of the easement. Its use of the land must be incompatible or irreconcilable with use of the easement." *Okemo Mountain, Inc.*, 164 Vt. at 453, 671 A.2d at 1268 (citations and quotations omitted).

¶ 16. Use of the road by the servient owner during periods of nonuse by the dominant owner is not adverse use. *Id.* While an easement may be extinguished by an abandonment, nonuse alone will not suffice, no matter how long continued. *Lague, Inc. v. Royea*, 152 Vt. 499, 503, 568 A.2d 357, 359 (1989); *Nelson v. Bacon*, 113 Vt. 161, 172, 32 A.2d 140, 146 (1943) (explaining that deeded easement-holder has same right of property therein as owner of the fee and thus it is not necessary that he make use of his right to maintain his title). "[T]o establish an abandonment there must be, in addition to non user, acts by the owner of the dominant tenement conclusively and unequivocally manifesting either a present intent to relinquish the easement or a purpose inconsistent with its future existence." *Nelson*, 113 Vt. at 172, 32 A.2d at 146; see also *Royea*, 152 Vt. at 503, 568 A.2d at 359 (applying same standard and recognizing that party claiming abandonment bears a heavy burden). As we noted in *Okemo Mountain, Inc.*, "it is difficult to establish adverse possession of an easement where the dominant owner abstains from using the easement." 164 Vt. at 453, 671 A.2d at 1268 (citing R. Powell & P. Rohan, 3 Powell on Real Property § 34.21, at 34-264-65 (1994)).

¶ 17. In this case, the trial court found that Bortz's construction of a driveway, and the berm that resulted, were insufficient from an objective standpoint to put

Higgins on notice that Bortz was attempting to oust Higgins from his easement. In a supplemental order, the court also found that while there were instances in which Bortz blocked Higgins from accessing the right-of-way between 1967 and 1975, it was not persuaded that Bortz's conduct extended over fifteen continuous years. The court also rejected plaintiffs' assertion that Bortz had installed what was now a barbed wire pasture fence at the end of the disputed right-of-way or that the fence had been in place for fifteen years prior to plaintiffs' commencement of legal action.

¶ 18. Plaintiffs do not challenge the court's findings of fact. Instead, they maintain that the facts as found do not support the court's conclusion. More specifically, they assert that the trial court should not have considered whether the right-of-way was accessible despite the berm but rather whether the berm itself was sufficient to commence an ouster. Plaintiffs also maintain that "there can be no doubt" that Bortz's actions in preventing Higgins from using the lane constituted a hostile act.

¶ 19. We find plaintiffs' arguments without merit. In conducting its analysis, the trial court properly considered whether the creation of the berm demonstrated Bortz's unequivocal "possession" of the right-of-way and whether it was "incompatible with possession and use by the dominant owner." *Percival*, 121 Vt. at 296, 155 A.2d at 740. The court concluded that the berm did not completely block access to the right-of-way, and this finding is supported by the record. We reject plaintiffs' assertion that the trial court should have found the berm sufficient to commence the ouster period even if it did not completely prevent use of the right-of-way. In support of this argument, plaintiffs rely on *Okemo Mountain, Inc.*, 164 Vt. at 453, 671 A.2d at 1268 ("Less permanent obstructions may be considered adverse where the dominant owner

recognizes the purpose is to prevent use of the easement."). Unlike the case on which they rely, however, plaintiffs failed to show that Higgins ever recognized that the purpose of the berm was to prevent his use of the right-of-way. Indeed, it appears that the berm was merely a byproduct from the driveway construction. The evidence that Bortz and Higgins had a long-standing dispute over the right-of-way, and that Bortz occasionally blocked Higgins from using the lane, does not show that the creation of the berm was a hostile act intended to initiate an ouster. As to the barbed wire fence, the trial court found that it had not been erected by Bortz, nor had it been in place for the requisite time period. As noted, plaintiffs do not challenge these findings.

¶ 20. Plaintiffs are left then with an assertion that Bortz's personal confrontations with Higgins were sufficient to extinguish the deeded easement. The trial court rejected this argument, and its decision is supported by the evidence. The personal confrontations between Higgins and Bortz did not deprive Higgins of his ability to use the right-of-way for the statutory fifteen-year period, nor did Bortz use the land in a way that was incompatible or irreconcilable with the use of the easement. See *id.* We need not decide, therefore, whether the trial court erred in considering whether Bortz's "conduct" continued throughout the statutory period rather than whether his "possession" of the property was continuous throughout this period. To the extent that plaintiffs suggest that Bortz's conduct caused Higgins to abandon the easement, the evidence does not support their argument. While Higgins may not have used the easement, he lawfully and physically could have, and plaintiffs have not established that Higgins "conclusively and unequivocally" manifested a present intent to relinquish the right-of-way. *Nelson*, 113 Vt. at 172, 32 A.2d at

146. We find no error in the trial court's rejection of plaintiffs' claim that the right-of-way was extinguished by their predecessor-in-title.

¶ 21. Finally, we turn to plaintiffs' assertion that the trial court erred in concluding that the right-of-way could be used for automobile travel. Plaintiffs argue that the language of the deed "strongly suggests" that the easement was intended to serve as a lane for cattle and other farm animals, and the use of automobiles on the lane falls outside of the historical use of the right-of-way, and it should be prohibited.

¶ 22. The trial court concluded that because there was no limitation on the grantee's use of the right-of-way in the 1881 deed that created it, none should be imported merely because, over time, horses had been replaced by automobiles and cows by ATVs. The court's conclusion is consistent with Vermont law and with the principle cited by plaintiffs that a servient estate must use a right-of-way in a manner consistent with the use contemplated at the time of its creation, and it may not use it in a way that materially increases the burden on the servient estate. *Greenberg v. Hadwen*, 145 Vt. 112, 116, 484 A.2d 916, 918 (1984). As the deed reflects, and the trial court found, there was no expressed limitation on how the right-of-way could be used at the time it was created.

¶ 23. In general, a dominant estate is entitled to use an easement "in a manner that is reasonably necessary for the convenient enjoyment of the servitude." Restatement (Third) of Property, Servitudes § 4.10 (2000); see also F.T. Chen, Annotation, *Extent and Reasonableness of Use of Private Way in Exercise of Easement Granted in General Terms*, 3 A.L.R.3d 1256, 1284 (1965) (explaining that a right-of-way which is general and without limitation in its terms "is generally held properly subjected to animal and vehicular use, the theory being that

such use, being necessary to the reasonable and proper use and enjoyment of the dominant estate, was within the contemplation of the parties") (collecting cases). We recognize that "[t]he manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefited by the servitude." Restatement (Third) of Property, Servitudes § 4.10, § 4.10 cmt. f (2000) (explaining that the policy underlying this rule is that "it permits servitudes to retain their utility over time and probably reflects the expectations of the parties who create servitudes of indefinite duration"); see also *Skow v. Goforth*, 618 N.W.2d 275, 278 (Iowa 2000) (deed that granted "right-of-way to drive teams" over land "must be interpreted to allow ingress and egress for modern vehicular traffic, including farm tractors and implements"); *Hodgkins v. Bianchini*, 80 N.E.2d 464, 467 (Mass. 1948) (holding that grant of a "cart road" did not restrict use of easement to horse-drawn vehicles but rather created a general right of way for vehicles, and stating that "[w]e should be very slow to hold that even ancient rights of way, not expressly restricted as to the type of vehicle ... could not be employed at all for the means of transportation in common use by a succeeding generation") (quotation omitted). In addition to this general principle, it is compelling that in this case the deed contained no restriction as to use. See generally 3 A.L.R.3d at 1287 (explaining that "[w]here the grant was not limited in its terms, it has usually been held that the right of passage included the right to pass by automobile or motor vehicle, even though such vehicles might not have been in use at the time the easement was created") (collecting cases). The trial court did not err in refusing to read a use restriction into the deed.

¶ 24. The cases cited by plaintiffs do not compel a contrary result. Plaintiffs assert that, as in *Greenberg*, the historical use of the easement should constitute its reasonable use. As discussed above, however, the use of an easement can change over time to reflect modern developments. Moreover, it is not clear that the discussion in *Greenberg* on which plaintiffs rely involved an easement. In *Greenberg*, the Court was asked to determine whether a landowner had wrongfully interfered with an adjacent landowner's use of "land in common" by allowing large trucks to obstruct the common area, which had historically been used for parking. The trial court determined that the reasonable use of the property was for parking and the plaintiff did not challenge this finding on appeal. *Greenberg*, 145 Vt. at 116, 484 A.2d at 918. We upheld the trial court's conclusion that the plaintiff's use of the common land constituted "an undue interference with the parties' reciprocal rights, as defined by the parties' long usage." *Id.* We analogized to easements, and specifically, the requirement that "no use may be made of [a] right of way, different from that established at the time of its creation, so as to burden the servient estate to a greater extent than was contemplated at the time of the grant." *Id.* (quotations omitted). In the instant case, as discussed above, we agree with the trial court that the use of automobiles on the right-of-way would not burden the estate to a greater extent than was contemplated at the time of the grant. The purpose of the right-of-way was to provide access to the land that lay beyond it, and the use of automobiles to traverse the route is consistent with that purpose.

¶ 25. Plaintiffs' reliance on *Dennis v. French*, 135 Vt. 77, 80, 369 A.2d 1386, 1388 (1977), is equally unavailing. Plaintiffs assert that, as in *French*, a departure from an easement's previous use unquestionably constitutes an additional burden on the servient estate. The *French* case involved the scope of a prescriptive easement, not an express easement, and the use to which a prescriptive easement may be put necessarily depends on past use. See *id.* ("The extent of the presumed right is determined by the user, upon which is founded the presumed grant; the right granted being only co-extensive with the right enjoyed."); see also *Gutcheon v. Becton*, 585 A.2d 818, 822 (Me. 1991) ("Unlike an express easement, whose terms can usually be ascertained from the creating instrument, the permissible uses of an easement acquired by prescription are necessarily defined by the use of the servient land during the prescriptive period."). In *French*, plaintiffs acquired a prescriptive right of user over a roadway for certain discrete purposes based on their past use of the property. We concluded that plaintiffs were not entitled to make a different use of the roadway because it would increase the burden on the servient estate and it would extend the right acquired by plaintiffs' prior use of the property. *French*, 135 Vt. at 80, 369 A.2d at 1388. Thus, *French* does not support plaintiffs' assertion that the reasonable use of the right-of-way at issue here depends on its historical use. Cf. *Nelson*, 113 Vt. at 172, 32 A.2d at 146 (holding that one who possesses deeded easement need not use the easement to maintain his title, and easement cannot be extinguished from nonuser alone). Moreover, as previously discussed, we agree with the trial court that the use of automobiles on the lane is consistent with the easement's purpose. We find no error in the trial court's interpretation of the deed.

*Affirmed.*