STATE OF VERMONT
ENVIRONMENTAL COURT

}
In re:  Smith 2-Lot Subdivision          }          Docket No. 247-11-05 Vtec
        (Appeal of Riley)                }
                                         }

### Decision on the Merits

This appeal arises out of the Town of Castleton (Town) Development Review Board's (DRB) approval of Appellee Howard Smith's application to subdivide his property located at 589 South Street, which Appellants Terence and Jo Ann Riley appealed. This is an on-the-record appeal, as the Town has adopted the necessary procedures for on-the-record review pursuant to 24 V.S.A. §§ 4471 and 4472. Appellants have filed a brief requesting judgment on all of the issues contained in their Statement of Questions and Appellee has filed a brief in response. Appellants made a supplemental filing as well. Appellants are represented by Gary R. Kupferer, Esq; Appellee is represented by Richard J. Wright, Esq., and the Town of Castleton is represented by John D. Hansen.

### Factual and Procedural Background

On July 22, 2005, Mr. Smith submitted an application to subdivide his South Street lot, located in the R-20 (South Village Zone) zoning district, into two lots. The existing lot currently has a pre-existing single family home, which is used as housing for students attending nearby Castleton State College.[1] As reflected in the application, the property is in the shape of an inverted "L", with the bottom of the L facing north and the top of the L facing south. The longest borders it shares are with the property of Castleton State College, to the north and east. The narrowest part of the inverted L, on the southerly property line, borders property of Thomas R. and May Louise Baptie. In the crook of the inverted L is the property of Frances A. Gray, Dolores A. Dow, Deborah L. Bessette, and Diane L. Gray. The westerly border of the subject property runs along South Street. There are no other streets bordering the subject property.

As originally proposed, Mr. Smith intended to divide the lot by drawing a property line from north to south approximately 135 feet east of South Street, creating one roughly square lot (Lot 1) with frontage on South Street and one irregular-shaped lot with no street frontage (Lot 2).

---

[1] Title to the adjoining property is actually held in the name of "Vermont State Colleges".

As originally proposed, the southerly portion of Lot 1 would contain a roadway, twenty feet wide, which would provide the only means of access to Lot 2. Mr. Smith subsequently relocated the proposed roadway to the northerly side of Lot 1, in an effort to appease some neighbors' concerns, particularly the abutting neighbors, Frances A. Gray, Dolores A. Dow, Deborah L. Bessette, and Diane L. Gray.

Mr. Smith proposed to demolish the existing residence and build two duplexes, one on each of the two new subdivided lots. In his brief filed with this Court, Mr Smith suggests that the proposed roadway would now run through the entire length of Lot 2 and provide access to the adjoining College property, for the benefit of Lot 1. While the second site map[2] Mr. Smith presented to the DRB, entitled "Proposed Two-Lot Subdivision From Lands of Howard S. Smith at 589 South Street" shows a proposed "roadway" that runs along the northerly boarders of Lots 1 and 2, there is no evidence in the record[3] of the DRB proceedings presented to this Court that the proposed roadway was to serve any purpose other than to provide access to Lot 2 from South Street. The written decision the DRB subsequently issued makes no reference to this roadway providing access to the Castleton State College property.

The DRB held its first warned public hearing on Mr. Smith's application on September 6, 2005, during which it expressed concerns regarding the application's completeness. The DRB therefore adjourned the hearing to allow Mr. Smith to submit the necessary additional documentation.[4]

Mr. Smith submitted a revised application, which the DRB reviewed at its next regular meeting on October 4, 2005. As revised, the roadway providing access to Lot 2 was relocated to run along the northerly boundary of Lot 1, as noted above. Mr. Smith also proposed that the dividing line between Lots 1 and 2 would be moved east, so that the depth of Lot 1 would be increased to 156 feet, measured from South Street to the border with Lot 2.

---

[2] The record includes site maps showing both the original and revised location of the roadway access for Lot 2.

[3] The record presented to the Court in this appeal is sparse, at best. We received the minutes for each of the DRB meetings; some of those minutes note that an audio record of the meeting was kept, but no such recording was provided to the Court. None of the minutes reflect an actual motion being made to approve Mr. Smith's application. The subsequent written DRB Decision, dated October 28, 2005, reflects that "the vote to approve the application" resulted in four DRB members voting "Yes" and a fifth member abstaining; however, we have not been provided with any written record of the motion and subsequent vote.

[4] It appears that there was a subsequent hearing addressing Mr. Smith's July 22, 2005 application on September 20, 2005 as it is mentioned in the DRB meeting minutes from October 4, 2005; however the Court has not been provided with any minutes from or other record of the September 20, 2005 meeting.

2

At the hearing, Appellants objected to the Board's review of the revised plan because the hearing had not been properly warned. The Board agreed to recess the hearing for two weeks. The DRB reconvened to hear Mr. Smith's revised application on October 18, 2005. On October 28, 2005, the DRB issued its Findings of Fact, Conclusions of Law and Order granting Mr. Smith's revised subdivision application and finding, in relevant part, that: (1) the proposed Lots 1 and 2 "meet the minimum lot standards for the R-20 zone"; (2) the northerly border of Lot 2 is the front lot line, "due to the right of way location"; and (3) that "it was possible to divide the parcel so that the front parcel [Lot 1] would continue to own the right of way." DRB Decision at 1. Based upon these Findings, the DRB approved Mr. Smith's revised subdivision application.

### Discussion

An "on-the-record" municipal decision is governed by the Municipal Administrative Procedure Act, 24 V.S.A. § 1201 et seq. The Act provides that a final decision by a municipal body must be in writing and "separately state findings of fact and conclusions of law." Id. § 1209(a). The findings of fact "shall explicitly and concisely restate the underlying facts that support the decision" and shall be based on evidence in the record at the hearing on the zoning application. Id. § 1209(b). The conclusions of law "shall be based on the findings of fact." Id. § 1209(c).

Interpreting similar requirements applicable to trial courts, the Vermont Supreme Court has noted that the purpose of the findings requirement "is to make a clear statement to the parties, and to th[e] Court if appeal is taken, of what was decided and how the decision was reached." New England P'ship, Inc. v. Rutland City Sch. Dist., 173 Vt. 69, 74 (2001) (noting that trial court's failure to make adequate factual findings "deprived the parties of the opportunity to challenge the propriety of the court's decision"). We therefore first seek to determine whether the findings that the DRB made are adequately supported by the evidence presented and preserved in the record.

### Lot Depth Requirement

In their brief, Appellants request that this Court reverse the DRB's decision and deny Mr. Smith's revised application because the DRB erred in finding that proposed Lots 1 and 2 meet the minimum lot standards contained in Section 330 of the Zoning Ordinance for the Town of Castleton (Ordinance) and because the DRB erred in "accepting the existence of a right of way"

across Lot 2.[5]  With respect to the former Question, we note at the outset that the DRB Decision lacks specific reference to either applicable facts or applicable provisions of the Ordinance upon which it based its Decision.  For instance, the DRB decision includes a finding that "the proposed lots both meet the minimum lot standards for the R-20 zone", yet the DRB failed to include either the actual dimensions of the proposed lots or the relevant provisions of the Ordinance in its written Decision.

On appeal, the parties have directed this Court to the specific Ordinance provision at issue, which is the "Lot Depth Minimum" for a residential property in the R-20 zoning district.  Ordinance § 330.  According to the table in § 330, the minimum lot depth is 150 feet.  The DRB determined that, for the purposes of interpreting this requirement, the "front" lot line of Lot 1 is the westerly boundary, fronting on South Street.  From that front lot line, the revised rear boundary for Lot 1 is 156 feet away.  The DRB's conclusion that Lot 1 conforms to the applicable lot depth requirement is therefore supported by the record and will not be disturbed.

The DRB also found that Lot 2 met the minimum lot depth requirement, but did not provide a specific finding as to the depth of Lot 2.  The DRB Decision specifically notes that the DRB concluded that the "northern border of parcel [sic] 2 is the front lot line, due to the right-of-way location."  Before attempting to determine if the record reflects an evidentiary foundation for the depth of Lot 2, we must determine if the DRB conclusion that the front lot line for Lot 2 is its northerly boundary has support in the record and the Ordinance.

**The Front Lot Line of Lot 2**

To determine which boundary of a lot should be regarded as the "front lot line," we need only look to the "Definitions" section of the Ordinance.  First, "lot depth" is defined as "the mean distances between the front and rear lot lines, measured at right angles to the front lot lines."  Ordinance § 130.  A "front lot line" is defined as "[t]he line separating the lot from the street or road right of way."  Id.

Appellee, in furtherance of his argument that Lot 2 satisfies the minimum lot depth requirement, argues on appeal that its northerly property line, abutting Castleton State College, is the front lot line because the roadway he intends to construct will extend from South Street, through Lot 1, and along the full northern border of Lot 2.  While Mr. Smith's revised site map

---

[5]  These two issues form the bases of Questions 1, 2, and 3 of Appellant's Statement of Questions.  Because our analysis of the substantive issues raised by these questions disposes of the issues raised by Appellant's Questions 4 and 5, we do not reach them in this Decision.

reflects that the proposed roadway will run along the northerly boundary of Lot 2, it appears to end at the eastern border of Lot 2. There is no evidence in the record forwarded to this Court that this roadway will extend beyond Lot 2, nor that it will serve any purpose other than to provide access from South Street to Lot 2. There is no DRB finding, nor evidence to support it in the record, that this roadway is for access to the College property.

A "street" or "road" is "open and available to public use", see Ordinance § 130 (defining "street" as "a thoroughfare, road, highway or public way open and available to public use"). The record does not reveal a DRB finding that the proposed roadway fits this definition. We can only conclude that the record before the DRB, and now before this Court, supported a conclusion that the sole purpose of the proposed roadway across Lot 1 was to provide access to Lot 2. Because this proposed roadway first intersects the western boundary of Lot 2, the legal conclusion directed by Ordinance § 130 (definition for "front lot line") is that the western boundary of Lot 2 is its front lot line. Based upon § 130 and the evidence in the record, we can find no support for the DRB determination that the northerly boundary of Lot 2 is its front lot line and therefore must reverse that determination.

Because the front lot line of Lot 2, which is the only lot that Appellants allege does not meet the lot minimum requirements, is the westerly lot line, the lot depth must be measured from this line. The DRB Decision does not contain a specific finding on this or other lot measurements. The legend in Appellee's revised site map suggests that the depth of Lot 2, as measured from its front (i.e.: westerly) lot line is about 105 feet at its widest point. At its narrowest, the lot is about 64 feet deep. The record reveals no foundation for any greater depth measurement for Lot 2. Therefore, Lot 2 does not meet the minimum depth requirement of 150 feet set forth in Ordinance § 330. We therefore must conclude that there is no factual foundation in the record for the DRB determination that Lot 2 meets "the minimum lot standards for the R-20 Zone." DRB Decision at 1. We therefore cannot allow that determination to stand.

**The Roadway**

Appellants also argue that the DRB erred in accepting the proposed roadway across the northerly property line of Lots 1 and 2 because it amounts to unlawful "gerrymandering" and because the creation of a right of way requires two separate parcels of property under the law of easements. First, under Ordinance § 702(4)(f), "[l]ots will not be approved in 'gerrymandered' configurations." Appellee argues that the lots are laid out in a manner that complies with the

5

Zoning Ordinance and therefore, it is impossible that they are gerrymandered. As noted above, we conclude that the record does not support a conclusion that the lot layout complies with the Ordinance. Therefore, the issue of whether the lots are "gerrymandered" is moot; we decline to address it.

Appellants also argue that, under the law of easements, Appellee cannot construct a right of way across Lots 1 and 2 because a right of way is an easement and an easement requires two separate parcels of property, a dominant estate and a servient estate. We disagree. Appellant is correct that certain types of easements implicate a dominant and a servient estate, such as appurtenant easements, easements by necessity, and prescriptive easements. See, e.g., Rowe v. Lavanway, 2006 VT 47, ¶5 (discussing difference between appurtenant easements, which serve land, and easements in gross, which are personal to holder). However, it is not necessary to delve into the law of easements to review the DRB Decision on appeal here. The fact that Appellee owns both proposed lots does not prohibit the construction of a roadway over one lot to serve as access for the other lot. Therefore, if Appellee's application conformed to the requirements of the Ordinance, which we have found it does not, Appellee would be entitled to construct such a roadway across his own property. This is because a right of way is not always an easement, although the reverse may, in most cases, be true. In this case, however, we find no independent basis in Appellants' easement argument for reversal of the DRB Decision.

## Conclusion

For the reasons stated above, we conclude that the DRB's October 28, 2005 Decision granting Appellee's subdivision application is not supported by the evidence in the record submitted to this Court. We further find that, based upon the record, Appellee's application does not comply with § 330 of the Zoning Ordinance governing minimum lot depth. We therefore **REVERSE** the DRB Decision and **VACATE** the approval of Mr. Smith's proposed subdivision.

This Decision concludes the current appeal pending before this Court. A Judgment Order accompanies this Decision.

Done at Berlin, Vermont this 9th day of February, 2007.

_____
Thomas S. Durkin, Environmental Judge

6