2010 VT 60

**CAMERON'S RUN, LLP v. Roberta FROHOCK and Todd Buik**

[9 A.3d 664]

No. 08-505

¶ 1. June 21, 2010. Defendants appeal from the superior court's decision establishing the location of the disputed rear boundary of their property in Milton, Vermont. We reverse and remand.

¶ 2. The following facts are not in dispute. Russell and Shirley Sweeney deeded the parcel of land at issue to defendant Frohock's parents in 1964. The deed of conveyance describes the lot as "located on the easterly side of [R]ailroad Street Extension . . . [with] frontage on said Railroad Street [E]xtension of 131 feet; a southerly line of 131 feet; [an] easterly line of 125 feet [;] and a northerly line of 136 feet." The deed states that "[a]ll corners have been marked by posts driven in the ground." With reference to Railroad Street Extension, the deed also "[i]nclude[s] herein . . . all right, title, and interest from said lot to the center of the highway." The posts referenced in the deed can no longer be found on the property. At the time of this conveyance, the Sweeneys owned the property bordering the Frohock lot to the rear and on both sides. The neighboring property was eventually purchased by plaintiff Cameron's Run.

¶ 3. In 1977, the Sweeneys hired Warren Robenstein, a professional land surveyor, to survey their property surrounding the Frohock lot and prepare an eight-lot subdivision plat. In performing his survey and creating the subdivision plat, Mr. Robenstein set boundary-marking pins on the land, including pins to mark the rear corners of the Frohock lot and at least some pins in the front of the lot bordering Railroad Street Extension.[1] In calculating the edge of the road Mr. Robenstein assumed a road width of three rods, or 49.5 feet,[2] and set his pins at half this distance from the center line.

---

[1] At some point during the intervening years, "Extension" has dropped off, and the road is simply, Railroad Street.

[2] One rod is 16.5 feet. Thus, three rods is 49.5 feet and four rods would be 66 feet. If the road is three rods wide, the surveyor measures 1.5 rods or 24.75 feet from the center of the road to determine where the lot begins. If the road is four rods wide, the lot frontage would start at 33 feet from the center of the road. Using the road's edge as the starting point for sur-

The rear boundary of each lot was set by measuring from these front pins.

¶ 4. Approximately twenty years after the Robenstein survey, defendant Frohock built a stockade fence near the rear boundary of the Frohock lot. In 2001, plaintiff commissioned a survey of the former Sweeney property, which it now owned. The survey disclosed that the rear portion of the stockade fence extended approximately eight feet beyond the rear property line of the Frohock lot as depicted in the Robenstein survey. In 2007, as part of a plan to subdivide and develop its property plaintiff asked defendants to remove the fence. Defendants refused, and this litigation to quiet title ensued.

¶ 5. At a bench trial, plaintiff asserted ownership up to the rear boundary of the Frohock lot as marked by the Robenstein survey. Defendants insisted that the fence was within their property line as measured from the midpoint of Railroad Street according to the deed. They based this contention on the claim that Railroad Street is not a three-rod road as supposed in the Robenstein survey, but is actually a right-of-way four rods wide. Defendants argued the significance of their property fronting a four-rod, or sixty-six-foot wide road meant that Robenstein's front pins were eight feet too close to the center of the road, and that defendants' rear boundary is beyond their stockade fence. Defendant Frohock testified that, while building the stockade fence, she did not search for or locate any boundary markers but relied on her father's assurance that the fence was within the lot's rear boundary. Mr. Robenstein, on plaintiff's behalf, testified that during his survey he did find some existing boundary posts in some locations noted in the original deed

veying a plot of land, the front border of a property with frontage on a three-rod road would be about eight feet closer to the center of the road than a property with frontage on a four-rod road.

and that his new pins marked the same locations. Defendants dispute whether the posts he found, if any, were the pins marking the front corners of the Frohock lot, i.e., those bordering Railroad Street Extension. The parties also dispute whether the road is four rods or three rods wide.

¶ 6. The trial court concluded that plaintiff owned the land up to the pins set on the rear corners of defendants' lot by the 1977 Robenstein survey. The court did not, however, find that Robenstein discovered the original posts. Instead, the court's decision can be attributed to Robenstein's testimony that the surveyor's pins were set according to his assumption that Railroad Street Extension was a three-rod road based on its appearance. The court opined that the road was probably also assumed by the grantor Sweeneys to be three rods wide in 1964 regardless of any likely legal description to the contrary. Considering that neither the Sweeneys nor the Frohocks ever complained about Robenstein's open pin placement during his survey, the court was persuaded that his pins probably matched the location of the original posts referred to in the deed.

¶ 7. These findings, however, turned out to be something of an aside, since the court did not ultimately rely upon the deed or the survey in its determination. Nor did it resolve the issue of road width. Instead, the court based its determination on adverse possession, concluding that plaintiff and its predecessors-in-interest had openly, notoriously, and in a hostile and continuous fashion, possessed the land in question for more than fifteen years. See 12 V.S.A. § 501 (recognizing title in those who possess land adversely to others for continuous period of fifteen years).

¶ 8. On appeal, defendants argue that the trial court erred in finding for plaintiff on a theory of adverse possession. Defendants reiterate that neither party

raised adverse possession at trial and argue they had no opportunity to contest or present evidence on the necessary elements found by the court. Additionally, defendants contend that many of the court's findings regarding the location of the property boundary are not supported by the record. Finally, defendants contend that the Sweeney-Frohock deed is not ambiguous, and thus, the court had no basis to look to extrinsic evidence to find ambiguity or to determine the parties' intent when the deed was executed. Even if the deed is ambiguous, defendants argue, the edge of Railroad Street Extension as legally established, together with the deed's metes and bounds description, should control the lot's boundaries rather than the pins set during the 1977 survey.

¶ 9. We agree that the trial court erred in applying adverse possession in favor of plaintiff. We also agree that if the road width is established outside of the deed as a matter of law, that legal description governs the commencement of the deed's metes and bounds, absent evidence that the grantor intended otherwise. Unless the evidence already submitted proves that grantor Sweeney understood, perceived, or believed the Railroad Street Extension right-of-way did not exceed three rods, on remand the court needs to address defendants' claim that the road is, in fact and in law, four rods wide.

¶ 10. Generally, "all parties are entitled to be spared having their litigation unexpectedly decided on the basis of issues and doctrines outside of the understood course and direction of the case as pleaded and tried." *Potwin v. Tucker*, 126 Vt. 414, 418, 234 A.2d 430, 433 (1967); cf. *Lakeview Farm, Inc. v. Enman*, 166 Vt. 158, 161, 689 A.2d 1089, 1091 (1997) (determining that issue properly raised and considered where both parties argued acquiescence in post-judgment memoranda). The policy underlying this rule "is the right to have notice, by pleading or otherwise, of the issues to be advanced and accepted at trial as critical to, or decisive of, the litigation." *Potwin*, 126 Vt. at 418, 234 A.2d at 433. Adverse possession was never asserted by the parties in this action, except as an affirmative defense in defendants' answer. Indeed, defendants contend, and plaintiff does not deny, that when the trial court inquired about adverse possession during a chambers-conference, both parties responded that they would not rely on that theory to establish their respective claims to the property. The record of the proceedings below shows that neither party sought to establish or respond to the elements of adverse possession. Consequently, defendants had no notice that adverse possession by plaintiff would be critical to the litigation and were unaware that the case would be decided on that basis. Therefore, the trial court's holding on this point must be set aside. See *Withington v. Derrick*, 153 Vt. 598, 605, 572 A.2d 912, 915 (1990) (reversing trial court's decision that the defendants acquired land by adverse possession where "adverse possession was never an issue at trial").

¶ 11. Having disposed of defendants' primary claim, we review their remaining complaints that the trial court erred in admitting extrinsic evidence to construe an unambiguous deed while considering the disputed boundary. Defendants' deed refers to Railroad Street Extension and posts driven into the ground, and provides a metes and bounds description of the lot boundaries. The monumental posts are long gone, and the parties dispute the width and controlling edge of Railroad Street. Defendants contend that the street itself is a monument referred to in the deed; a street legally described in town highway documentation as a four-rod road which would place the back boundary past the allegedly encroaching fence. Plaintiff responds that the pins placed by Robenstein in 1977 mark the location of the posts referenced in the deed and are therefore the monuments

that must control over courses and distances in the deed.

¶ 12. In boundary disputes, "[t]he burden is upon the plaintiff of showing that the location of this common [property] line upon the ground is where he claims it is." *Neill v. Ward,* 103 Vt. 117, 145, 153 A. 219, 232 (1930), *overruled on other grounds by Vt. Structural Steel v. Dep't of Taxes,* 153 Vt. 67, 569 A.2d 1066 (1989). The master rule in construing a deed is that "the intent of the parties governs." *DeGraff v. Burnett,* 2007 VT 95, ¶ 20, 182 Vt. 314, 939 A.2d 472 (quotation omitted). However, the court may not consider extrinsic evidence where no ambiguity can be found in the deed. *Main St. Landing, LLC v. Lake St. Ass'n,* 2006 VT 13, ¶ 7, 179 Vt. 583, 892 A.2d 931 (mem.). Ambiguity of a deed is a matter of law, which we review de novo. *Kipp v. Chips Estate,* 169 Vt. 102, 107, 732 A.2d 127, 131 (1999). If the intent of the parties to the deed is ascertainable from the plain language, the deed is not ambiguous. See *DeGraff,* 2007 VT 95, ¶ 20 (ambiguity found where intent of parties is not discernable from language within four corners of deed (citing *Main St. Landing,* 2006 VT 13, ¶ 7)); *Rowe v. Lavanway,* 2006 VT 47, ¶ 11, 180 Vt. 505, 904 A.2d 78 (mem.) (noting the Court looks first to plain language of the deed because "we presume that it declares the parties' intent").

¶ 13. As an initial matter, we note that the trial court determined the deed to be unambiguous. As a conclusion of law the trial court stated:

> Although it may be founded upon an incorrect assumption, that Railroad Street is three rods wide, nothing in the deed is ambiguous. Its language does not reasonably admit to more than one interpretation.

The court was correct in that there is no ambiguity in the description as it commences from the frontage on Railroad Street. As also noted by the trial court, town roads are ordinarily presumed to be three rods wide, absent proof to the contrary. See 19 V.S.A. § 702 (mandating three rod rights-of-way for town highways "unless otherwise properly recorded") and *id.* § 32 (presuming a three rod width for highways in absence of preserved or properly recorded original survey or when "boundaries cannot be determined"); see also *Town of Ludlow v. Watson,* 153 Vt. 437, 441, 571 A.2d 67, 69 (1990) (explaining that these two statutes create a rebuttable presumption that the width of a highway is three rods). Absent either ambiguity in the deed to compel an examination of extrinsic evidence of grantor-grantee intent or evidence that the highway is four rather than three rods wide, the frontage boundary would begin at the edge of the presumptive three rod highway.

¶ 14. The latter solution, however, did not necessarily obtain here, since there was evidence to challenge the presumed three rod width of Railroad Street. The superior court acknowledged that "Railroad Street Extension may have a width of four rods (66 feet), which would mean that any land owned by the Sweeneys and thereby capable of being conveyed to the Frohocks would have been farther back." This was apparently based on evidence introduced in the form of a Milton town survey in support of defendants' proposition that Railroad Street Extension was indeed a four-rod road. Without deciding, the court went so far as to state that there was "good reason to believe that [the road], as it passes the Frohock property, is part of a 1790 road laid out from the 'Mansfield Mill' by the Westford line," and "[i]f so, then the street is, in fact, four rods wide."

¶ 15. Nevertheless, the court abandoned the issue of the street's width in favor of a discussion and interpretation of the Sweeneys' intent, based essentially, on the physical appearance of Railroad

Street Extension and surveyor Robenstein's three-rod assumption in 1977. The court observed that the street looked now and in the past like other town highways commonly three rods wide and opined that Robenstein's 1977 three-rod assumption was probably also the assumption underlying the original Sweeney-Frohock conveyance in 1964. This assumption was further confirmed, in the court's view, by the Frohocks' quietude in the face of Robenstein's placement of red-painted survey pins in 1977, consistent with a three-rod-wide Railroad Street Extension. In its conclusions, the court proceeded to treat Robenstein's 1977 pins as substitutes for the then-vanished posts, and reasoned that these monuments reflected the actual intent of the grantor and grantee independent of the legal or presumed width of Railroad Street Extension, on the long-settled principle that measurements must yield to monuments. See *Marshall v. Bruce*, 149 Vt. 351, 352, 543 A.2d 263, 264 (1988) (reiterating that "monuments designated or referred to in the description of the grant control over courses and distances").

¶ 16. This discussion proved mostly, if not wholly, academic for the trial court since, as previously remarked, it determined the lot dimension on adverse possession rather than on the foregoing appearances, assumptions, pins, and substitute monuments. We review this analysis, however, to lend clarification and to avoid confusion on remand. Although facially appealing, this potentially alternative resolution turns on several faulty premises.

¶ 17. One is that the 1977 pins stand in the stead of the lost 1964 posts. The court made no finding that the surveyor located any original posts. The new pins are not and cannot be the monuments described by the deed. For monuments to control the dimensions of a conveyance, "the existence and location of the monuments must be proved. . . . If they once existed,

but have been destroyed by time or some other cause, their former existence and location may be shown by parol; and if clearly identified, they will still control courses and distances." *Bagley v. Morrill*, 46 Vt. 94, 100 (1873). So far as we can tell, there was no parol evidence about where the posts used to be. To the extent the court found the 1977 survey pins probably marked the same location as the posts, the placement of those pins, according to the court's findings, was driven by the surveyor's assumptions and his survey, but not by testimony relating to where the old posts were located or their remnants found. When locations of the monuments are not proved, courses and distances must govern. See *Neill*, 103 Vt. at 162-63, 153 A. at 239 (citing *Bagley*, and holding that where field book survey included measurements to "corner trees" which could no longer be found, destruction of monumental trees "confine" proponent "to the courses and distances given in the field book"). Because they were not derived from the location of original posts, the placement of the 1977 survey pins were monuments only of *that* survey, and the pins do not constitute the monuments mentioned in the deed.[3]

---

[3] The trial court cited *Pion v. Bean*, 2003 VT 79, ¶ 15, 176 Vt. 1, 833 A.2d 1248, to support its conclusion that the 1977 pins were in the same positions as the original posts based on "credible testimony as to the location of those [lost] pins." The "credible testimony" referred to, however, was not that old pins were found, or that their locations were described by eyewitnesses as in *Pion*, but that the original posts "were in the same place as Robenstein's pins" based on the surveyor going "along Railroad Street setting his pins *as if it were* a three rod road . . . [and] apparently determined rear dimensions based on the same assumption" of corner monuments no longer in existence. *Id.* (Emphasis added.) *Pion* upheld the trial

¶ 18. Frohock's lot depth to its back boundary as shown in the 1977 survey was entirely dependent upon Robenstein's assumption that Railroad Street Extension was three rods wide. That assumption, in turn, was based on his knowledge that town highways were typically three rods wide. That these assumptions were reasonable did not mean the surveyor was necessarily correct. Although the law presumes a three-rod width, the law equally recognizes that town highways may be duly surveyed and recorded as wider. 19 V.S.A. § 702. Defendants proffered such evidence, but the trial court determined the actual width of the street was irrelevant if the grantor and grantee in 1964 were operating under the same assumption evinced by the surveyor in 1977: that the street fronting the lot was three rods wide.

¶ 19. Noting that Railroad Street looked now as it did in 1977 — no different from typical three-rod town roads — the court concluded that it probably appeared the same to the Sweeneys and the Frohocks in 1964, thirteen years earlier. Several weaknesses arise in this approach. The court presumed, without evidence, that the Sweeneys, in granting the lot, did not or would not know the legally described highway boundary of their property. The court does not explain how this perception is borne out by a prepon-

court's findings reestablishing the location from both parol and survey evidence. This did not happen here. In the context of the court's adoption of the three-rod-road-assumption, and absent findings of fact confirming any physical or descriptive evidence as to the location of the original markers, the testimony relied on in the instant case concerned the surveyor's methodology, rather than direct evidence on the whereabouts of the old posts.

derance of evidence.[4] Were this a relatively immutable landmark, like the pyramids at Giza or even Levittown, one might reasonably expect it to have looked the same some thirteen years earlier. In this case, however, the court assumed a three-rod appearance in 1964 without any *physical description, information relating* to the age of the neighboring development along the same street, or any other evidence of what the street actually looked like at the time of conveyance thirteen years before Robenstein's survey. The court found that the street's appearance remained the same in its "recent past," but without receiving specific evidence that such continuity extended back to the time of the deed. The passing of more than a decade is not, alone, preponderant evidence of sameness in retrospect.

¶ 20. Even if we assume the physical environs of Railroad Street Extension appeared the same to the Sweeneys and the Frohocks in 1964, as they did to Robenstein in 1977, there was no evidence that the deed was ambiguous, nor was there evidence to suggest the parties to the conveyance intended a measure of the street other than the highway's legally described width. "The court may consider 'limited extrinsic evidence of "circumstances surrounding the making of the agreement" in determining whether the writing is ambiguous,' which is a question of law subject to de novo review." *Main Street Landing*, 2006 VT 13, ¶ 7 (quoting *Chips Estate*, 169 Vt. at 107, 732 A.2d at

[4] As the court quipped, this was "not the King Ranch," so an eight-by-one-hundred-twenty-five-foot strip of land would seem not so insignificant as to be presumptively ignored by the Frohocks. Moreover, if the three-rod width was so probably apparent in 1964, why did the Frohocks evidently assume the opposite when they raised their fence years before any conflict with plaintiff?

131). Limited admission of extrinsic evidence includes the circumstances surrounding the making of the agreement as well as the object, nature and subject matter of the writing. *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 578, 556 A.2d 81, 84 (1988). Here, other than the fact of the conveyance itself and the supposed appearance of the street, there was no extrinsic evidence of circumstances surrounding the Sweeney-Frohock transaction to suggest the terms of the deed were ambiguous. The physical appearance of the street by itself does not render the deed's reference to Railroad Street Extension ambiguous. It is not uncommon for government rights-of-way to exceed their immediately apparent dimensions, and the trial court's sua sponte reliance on the physical, rather than legal, characteristics of the roadway would likely render uncertain every landowner's deeded course bounded by a public highway.

¶ 21. Again, in an unambiguous deed, the manifest intent of the parties governs. The deed conveyed by the Sweeneys to the Frohocks described the lot as on the "easterly side of [R]ailroad Street Extension [with] a frontage on said Railroad Street Extension." The only boundaries are said to be marked by posts that are no longer extant. Nevertheless, the deed explicitly conveys interest and title "from said lot to the center of the highway." Defendants' evidence was that the road, according to a 1790 town survey, is four rods or 66 feet across, so that its edge is 33 feet from the center of the road.[5] The

law presumes that an owner of land abutting a highway owns to the middle of the highway unless there is clear evidence the parties intended otherwise. *Abraham v. Dougherty*, 115 Vt. 71, 74, 51 A.2d 133, 134 (1947). In this case, the presumption was explicitly confirmed by the deed and, aside from the surveyor's assumption to the contrary in 1977, there was no evidence to contradict the deed.

¶ 22. The trial court erred in deciding the case on adverse possession grounds. In considering the dimensions of the Sweeney-Frohock conveyance, it was error to equate the 1977 pins with the original corner posts. There was insufficient foundation upon which to extend the surveyor's assumption about the right-of-way in 1977 back to the grantor and grantee in 1964, absent evident intent on their part to convey something other than what the deed set forth, or evidence that they relied on something other than the legal description of the boundary street. Plaintiff failed to show ambiguity, so extrinsic evidence of the boundary lines, including Robenstein's testimony, was irrelevant in any event.

¶ 23. We remand to the trial court for a determination, according to the evidence of record to date, whether the road depicted in the 1790 survey is, in fact, the present day Railroad Street Extension. If defendants' town documents establish that these roads are one and the same then the trial court should rely upon applicable presumptions, as explained above, to resolve the issue and measure to the corner points accordingly.

*Reversed and remanded for further proceedings consistent with this order.*

Motion for reargument denied August 25, 2010.

---

[5] Although plaintiff did not object to the highway survey, and witnesses for both parties seemed to agree that the road was four rods wide, as did the court, defendants' claim regarding the road's width was not formally decided by the trial court.