¶ 28.
Robinson, J.,
concurring in the judgment. I concur in the result, but write separately to emphasize the ways in which I part ways with the majority’s approach.
¶ 29. First and foremost, I simply don’t understand the majority’s instructions to the trial court with respect to the scope of the “collapse” coverage. The majority concludes that the proper construction of the language in question, providing for coverage for “ ‘loss’ caused by or resulting from risks of direct physical ‘loss’ involving collapse of ‘buildings’ or any part of ‘buildings,’ ” is not governed by Gage. Instead, the majority holds — and I agree — that the policy language in this case extends coverage to circumstances in which there is a risk of imminent collapse. Ante, ¶ 24. Given the conflicting evidence in the summary-judgment record concerning the nature and extent of the risk of imminent collapse, the majority concludes that summary judgment on the applicability of the collapse coverage for either party is inappropriate. So far, so good.
¶ 30. But then the majority says something puzzling:
Even applying the “risk of imminent collapse” standard to the facts, the court may determine that the policy language is ambiguous as a matter of law and construe the ambiguity favorably for management association. The court can make this determination only once it has resolved the factual issues.
Ante, ¶ 26 (citation omitted).
¶ 31. This statement is hard to understand for several reasons. For one, in the preceding paragraphs the majority construes the contract and lays down the standard by which the “collapse” coverage is to be evaluated. Ante, ¶¶ 17-24. By then suggesting that in fact the contract may be ambiguous and thus have some different meaning, this statement seems to walk back the conclusion that the majority has just articulated. It’s hard to see what guidance, if any, this provides the trial court.
*43 ¶ 32. Moreover, the question of whether a contract is ambiguous is a question of law. See In re Spear, 2014 VT 57, ¶ 15, 196 Vt. 517, 99 A.3d 618 (“The threshold question of whether contract language is ambiguous is a question of law.”) (citing Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 577, 556 A.2d 81, 83 (1988)). See also Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 695 (2d Cir. 1998) (“Whether contract language is ambiguous is a question of law, which we review de novo.”); Baybank v. Vt. Nat’l Bank, 118 F.3d 30, 33 (1st Cir. 1997) (“In Vermont, whether a contract is ambiguous is a question of law.”); 1 B. O’Donnell, Law and Practice of Insurance Coverage Litigation § 1.2 (2000) (“The interpretation of an insurance policy and the identification of ambiguous policy provisions typically present questions of law subject to de novo review.”); 11R. Lord, Williston on Contracts § 30:5, at 64 (4th ed. 1999) [hereinafter Williston] (“The determination of whether a contract is ambiguous is a question of law for the court.”); 5 M. Niffin, Corbin on Contracts § 24.30, at 330 (rev. ed. 1998) (“The decision as to whether a contract is ambiguous is made by the court.”); 2 S. Plitt et ah, Couch on Insurance §21:13 (3d ed. 1995) (‘Whether or not a contract of insurance is ambiguous is a question of law for the court.”); R. Warner, All Mixed Up About Contract: When Is Contract Interpretation a Legal Question and When Is It a Fact Question!, 5 Va. L. & Bus. Rev. 81, 92 (2010) (“[T]he interpretation of insurance policies is almost always a legal issue.”). If this contract is ambiguous, now is the time for us to say so, and to invite the court on remand to consider evidence surrounding the execution of the contract to resolve any ambiguity.
¶ 33. Moreover, the question of whether the contract is ambiguous is answered with reference to the contract itself, or, at most, the contract and a narrow class of extrinsic evidence relating to the formation of the contract. See Spear, 2014 VT 57, ¶ 15 (When addressing the threshold question of whether ambiguity exists, a court may consider limited extrinsic evidence, including the circumstances surrounding the making of the agreement as well as the object, nature and subject matter of the writing.” (emphasis added) (quotation omitted)); Cameron’s Run, LLP v. Frohock, 2010 VT 60, ¶ 20, 188 Vt. 610, 9 A.3d 664 (mem.) (“The court may consider limited extrinsic evidence of circumstances surrounding the making of the agreement in determining whether the writing is ambiguous, which is a question of law subject to de novo *44 review.” (quotation omitted)); Breslauer v. Fayston Sch. Dist., 163 Vt. 416, 425, 659 A.2d 1129, 1135 (1995) (noting that in making legal determination as to whether contract is ambiguous, court may consider “ ‘evidence as to the circumstances surrounding the making of the agreement as well as the object, nature and subject matter of the writing’ ” (quoting Isbrandtsen, 150 Vt. at 578, 556 A.2d at 84)); see also Williston § 30:5, at 67-68 (“While there is authority that the court is limited in its consideration solely to the face of the written agreement, [it is also held] that a court may provisionally receive all credible evidence concerning the parties’ intentions to determine whether the language of the contract is reasonably susceptible to the interpretation urged by the party claiming ambiguity.” (footnotes omitted)). No evidence about the balconies and joists can or should advance the analysis of whether this contract is ambiguous and how it should be construed. The majority’s suggestion to the contrary upends black-letter law concerning the construction of contracts, and sends mixed signals to the trial court on remand.
¶ 34. Second, I would not remand with respect to the host of other legal issues squarely presented on appeal. The majority leaves it to the trial court to address in the first instance the purely legal questions that are subject to de novo review on appeal. One issue squarely raised by the motions below and briefed on appeal is whether, assuming plaintiff can show a collapse, a factfinder could conclude on this summary-judgment record that the collapse resulted from one of the covered causes of collapse — in particular, from “hidden decay.” If a factfinder could conclude that the loss resulted from hidden decay, Philadelphia’s summary-judgment motion would be defeated. If a factfinder could conclude that the loss did not result from hidden decay, Equinox’s summary-judgment motion would be defeated.
¶ 35. The resolution of this question is a matter of law. See Rouleau v. Williamstown Sch. Bd., 2005 VT 131, ¶ 2, 179 Vt. 576, 892 A.2d 223 (mem.); Washington v. Pierce, 2005 VT 125, ¶ 17, 179 Vt. 318, 895 A.2d 173. By definition, a summary-judgment question does not require a weighing of evidence or judgments about credibility. See Sabia, v. Neville, 165 Vt. 515, 523, 687 A.2d 469, 474 (1996) (“In ruling on a motion for summary judgment, it is not appropriate for us to resolve disputed issues of fact or questions of credibility.”). And the trial court’s judgment on this question is subject to de novo review. Rouleau, 2005 VT 131, ¶ 2; *45 Washington, 2005 VT 125, ¶ 17; Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 9, 177 Vt. 287, 865 A.2d 850.
¶ 86. If, by remanding, the majority is implicitly concluding that there is sufficient evidence on both sides of the “hidden decay” question to defeat summary judgment, I do not disagree. But the majority neither says this nor undertakes any sort of analysis of the summary-judgment record to support such a conclusion. Instead, the majority defers to the trial court to make its own legal ruling on the summary-judgment motion in the first instance, even though its analysis will be subject to de novo review. See N.H. Right to Life PAC v. Gardner, 99 F.3d 8, 18 (1st Cir. 1996) (“Where the merits comprise a purely legal issue, reviewable de novo on appeal and susceptible of determination without additional factfinding, a remand ordinarily will serve no useful purpose.”).
¶ 87. Similarly, the questions of whether the general policy exclusion of coverage for losses resulting from defective design or construction applies to the collapse coverage provisions appended to the contract as “Additional Coverage,” and whether, if so, the “resulting loss” exception to the exclusion applies, are all legal questions that were raised below, have been briefed on appeal, and are potentially dispositive of this case. I believe we should have reached them.
¶ 88. The majority’s approach may reflect an appropriate recognition of the wisdom of the trial court, and a desire to consider that court’s legal analysis of issues that it did not reach the first time around. But I fear that it leaves the parties and trial court with no guidance, leaves the trial court with a considerable amount of work, and potentially prolongs an already lengthy course of litigation for all concerned.