STATE OF VERMONT

SUPERIOR COURT                                                    ENVIRONMENTAL DIVISION

}
In re Gould Accessory Dwelling Application     }        Docket No. 33-3-11 Vtec
}
}

Decision and Order on Cross-Motions for Summary Judgment

Appellant-Applicants Donald Gould and Julie Gould (Appellants) appealed from a decision of the Development Review Board (DRB) of the Town of Monkton denying their application for a zoning permit for an accessory dwelling unit. Appellants have entered an appearance representing themselves; the Town is represented by David Rath, Esq. Interested Person Scott Gustin entered an appearance representing himself but did not take an active role on the present motions.

Cross-Motions for Summary Judgment

Appellants and the Town have each moved for summary judgment on the legal issue of whether 24 V.S.A. § 4412(1)(E), adopted in 2004, requires the municipality to consider an application for an accessory dwelling unit in a separate building from the principal single-family dwelling, despite § 512 of the 1986 Monkton Zoning Regulations, which provides in full that: "[t]there shall be only one residential building on a lot."

A grant of "[s]ummary judgment is appropriate when, giving the benefit of all reasonable doubts and inferences to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Gade v. Chittenden Solid Waste Dist., 2009 VT 107, ¶ 7 (citing Mooney v. Town of Stowe, 2008 VT 19, ¶ 5, 183 Vt. 600 (mem.); V.R.C.P. 56(c)). When considering cross-motions for summary judgment, the Court gives each party "the benefit of all reasonable doubts

1

and inferences when the opposing party's motion is being judged." City of Burlington v. Fairpoint Communications, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332 (citing Toys, Inc. v. F.M. Burlington, Co., 155 Vt. 44 (1990)). The facts stated in this decision are undisputed unless otherwise noted.

Factual and Procedural Background

The property at issue in the present case is one lot of a three-lot subdivision; the subdivision was approved in two stages in 2009. The lots are shown on the plan provided as Town's Exhibit 5 numbered as Lots 6, 7, and 8.[1] Lots 6 and 7 have road frontage, have areas of 2 acres and 1.3 acres, respectively, and are each approved for one single-family house. Appellants' 11.4-acre lot at issue in the present appeal is marked as Lot 8 and has road frontage between that of Lots 6 and 7. It contains an existing house and is served by an existing driveway, but is proposed to share a wider driveway with Lot 6 when the subdivision is built out.

A state Wastewater Disposal and Potable Water Supply permit issued by the ANR (the 2009 ANR Permit) applies to the three lots. It approved two wells, both located on Appellants' lot, one to be shared by Lot 6 and Appellants' existing house on Lot 8, and the other to serve Lot 7. The 2009 ANR Permit also approved each of the three lots for separate on-site wastewater disposal systems, each serving a single three-bedroom single-family dwelling. The 2009 ANR Permit requires prior ANR review and approval for any expansion of the project or increase in occupancy.

Appellants' lot contains a house, a garage with a large parking area, a shed near the parking area, and, farther from the road frontage, a barn, another shed, and two

_____

[1] On that plan, the road is shown at the bottom of the plan and north is towards the top of the plan. Compare with Town's Ex. 1, Appellants' application, which is drawn with the road at the top of the sketch plan, showing north towards the bottom of the sketch plan.

2

smaller outbuildings. Material facts have not been provided to the Court as to the total habitable floor area of the principal single-family house; however, finding 5 of the Zoning Administrator's decision on appeal in this matter, which states that the accessory dwelling unit can have an area of "up to 706.8 square feet," must have been calculated by the Zoning Administrator as 30% of the total habitable floor area of the principal single-family house. 24 V.S.A. § 4412(1)(E).

In the present application Appellants propose to construct a new 644-square-foot, one-bedroom dwelling unit (consisting of a 10′ x 50′ segment and a 12′ x 12′ segment, as well as an 8′ x 12′ deck not counted as habitable)[2] as a separate dwelling unit, claiming that it is accessory to their principal single-family house. Appellants propose to locate the accessory dwelling unit so that it is set back 75 feet from the road and 50 feet from the east side property line shared with Lot 7, putting the northwest corner of the proposed accessory dwelling unit approximately 160 to 200 feet from the southeast corner of the principal single-family house. Appellants propose that the accessory dwelling unit will be served by its own driveway and parking area, located close to the boundary with Lot 7, and will have its own curb cut onto the adjacent public road. They propose that the accessory dwelling unit will be served by a septic system shared with that of the principal single-family dwelling; their application appears to show that the accessory dwelling unit will be served by the well on Lot 8 that is approved for the use of Lot 7.

The Zoning Administrator denied the permit for two reasons: that the application lacked the required ANR potable water and wastewater disposal permit[3]

---

[2] At page 6 of 8 of their document filed May 10, 2011, Appellants themselves state that the dwelling unit they are applying for "can be only 501.6 square feet." It is not clear to the Court whether only the 10′ x 50′ segment of their proposal is proposed as a dwelling unit. However, this fact is not material to the present decision, in light of its outcome.

[3] As of the date of the application, Appellants had not submitted to the Zoning Administrator any ANR approval of the changes to the wastewater disposal and

and that the proposed accessory dwelling unit was not attached to or located within the existing single-family dwelling, that is, that it conflicted with the requirement of § 512 of the 1986 Monkton Zoning Regulations that only a single residential building may be located on a lot. Appellants appealed the decision to the DRB, which effectively denied the application as proposed by Appellants, ruling that it "approve[d] the appeal of the zoning administrator's decision with the condition that the accessory dwelling needs to be physically attached to the primary residence."

Statutory and Regulatory Provisions

The Monkton Zoning Regulations were most recently amended in 1986. At that time, 24 V.S.A. § 4406 of the state zoning enabling statute required municipal zoning regulations to include certain listed provisions for existing small lots, required frontage on or access to public roads or waters, protection of home occupations, and equal treatment of housing.[4] At that time, the subsection on equal treatment of housing only contained three provisions, dealing with prefabricated housing such as mobile homes, dealing with housing to meet the needs of the population, and dealing with mobile home parks.

To comply with then-24 V.S.A. § 4406, the 1986 Monkton Zoning Regulations provide, in § 500A through § 500D, language from the state statute addressing existing small lots, required frontage on or access to public roads or waters, protection of home occupations, and equal treatment of housing. Like the statute as it existed at that time, the 1986 Monkton Zoning Regulations do not contain any provision addressing accessory dwelling units.

potable water supply systems for the three-lot subdivision resulting from the proposed addition of the one-bedroom accessory dwelling unit.

[4] The required statutory provisions found in former §4406 were amended and recodified in 2004 at 24 V.S.A. § 4412, the statutory section at issue in the present appeal. See 2003, No. 115 (Adj. Sess.), § 119(c).

Section 512 of the 1986 Monkton Zoning Regulations, entitled "Dwelling on Lots," provides in full that "[t]here shall be only one residential building on a lot." Section 320(5) of the 1986 Monkton Zoning Regulations prohibits the Zoning Administrator from issuing a zoning permit unless the application includes any other required governmental written approval, such as an amended ANR wastewater disposal and potable water supply permit. The Monkton Zoning Regulations have not been revised or amended since 1986.

In 1992, within the subsection of former 24 V.S.A. § 4406(4) addressing equal treatment of housing, § 4406(4)(D) was added to the state statutes to protect landowners' ability to create certain types of accessory dwelling units. See 1991, No. 130 (Adj. Sess.), § 3. It provided that:

> no zoning regulation shall have the effect of excluding for review as a conditional use one dwelling unit constructed within or attached to a primary single family residence located in a district in which single family residences are a permitted or conditional use. (Emphasis added.)

As enacted in 1992, § 4406(4)(D) also then required such accessory dwelling units to satisfy three additional requirements: that the primary residence be owner-occupied; that the floor space of the accessory unit not exceed 400 square feet or 30% of the floor space of the existing living area of the primary residence, whichever was greater; and that occupancy of the accessory unit be restricted to not more than two persons, one of whom had to either be related to the owner, or be at least 55 years of age, or be disabled.[5]

---

[5] A related provision already in the municipal planning subchapter required municipal plans to include a housing element including a recommended program for addressing the housing needs of low and moderate income persons; the 1992 amendment to that section allowed the program to include provisions for "conditionally permitted accessory apartments within or attached to single family residences which provide affordable housing in close proximity to cost-effective care and supervision for relatives

Effective on July 1, 2004, the statutory provisions governing accessory dwelling units were substantially amended as part of major legislative changes to the Vermont Planning and Development statute, chapter 117 of Title 24.  2003, No. 115 (Adj. Sess.). Many of the statutory sections were also recodified.  The savings clause applicable to the entire statutory revision provided that, as of September 1, 2005, certain listed sections, including § 4412, "shall control over any inconsistent municipal regulations." 24 V.S.A. § 4481.[6]

The former "Required regulations" section, § 4406, was recodified at 24 V.S.A. § 4412, entitled "Required provisions and prohibited effects."  It provides specifically that "[n]otwithstanding any existing bylaw, the following land development provisions shall apply in every municipality."  (Emphasis added.)  The title of the subsection containing the provisions on accessory dwelling units, § 4412(1), was revised to clarify the subsection's focus on affordable housing, by retitling it "Equal treatment of housing and required provisions for affordable housing."  24 V.S.A. § 4412(1).

Within that section, the subsection regulating accessory dwelling units, § 4412(1)(E), continues to require that the primary single-family dwelling be owner-occupied, but was amended to require that the accessory dwelling unit be located within "or appurtenant to" (rather than "or attached to") the primary single-family dwelling.[7]  Section 4412(1)(E) defines an accessory dwelling unit as "an efficiency or

or disabled or elderly persons."  24 V.S.A. § 4382(a)(10) (as amended by 1991, No. 130 (Adj. Sess.), § 2).

[6]  Moreover, § 4481 gave municipalities seven years—to September 1, 2011—to amend their zoning ordinances to conform with the provisions of the revised statute.

[7]  The related provision on municipal plans was also revised to eliminate any language suggesting that an accessory dwelling unit must be "within or attached to" the primary single-family dwelling.  Rather, it was amended to state that the affordable housing plan element for a municipality "should account for permitted accessory dwelling units, as defined in [24 V.S.A. § 4412(1)(E)], which provide affordable housing.  24 V.S.A. § 4382(a)(10).

one-bedroom apartment" that is "clearly subordinate to" the primary single-family dwelling. It no longer requires that the occupants be related to the owners, disabled, or over a certain age. Rather, it requires that the property as a whole has sufficient wastewater capacity, that the accessory dwelling unit does not exceed 30% of the primary single-family dwelling's total habitable floor area, and that the property meets the "[a]pplicable setback, coverage, and parking requirements" in the municipal bylaws. § 4412(1)(E)(i–iii).

Importantly, § 4412(1)(F) was also added to the statute, stating that nothing in the statute "shall be construed to prohibit" certain types of municipal bylaw provisions. Section 4412(1)(F)(i) explicitly states that municipalities are allowed to adopt bylaws that are <u>less</u> restrictive of accessory dwelling units than what is specified in the state statute. Section 4412(1)(F)(ii)(I) specifically allows municipalities to require conditional use review for new accessory structures that are involved in the creation of accessory dwelling units.


<u>Cross-Motions for Summary Judgment</u>

The issue before the Court is whether the statutory change regarding accessory dwelling units—from "within or attached to" the primary dwelling to "within or appurtenant to" the primary dwelling—now precludes the Town from applying § 512 of its 1986 Zoning Regulations to require accessory dwelling units to be attached to the primary dwelling.

When courts interpret a statute, their principal goal is to ascertain the intent of the legislature. <u>In re Williston Inn Group</u>, 2008 VT 47, ¶ 14, 183 Vt. 621 (mem.); see also <u>In re Village Assocs. Act 250 Land Use Permit</u>, 2010 VT 42A, ¶ 9, 188 Vt. 113 (citing <u>In re Ambassador Ins. Co.</u>, 2008 VT 105, ¶ 18, 184 Vt. 408). To give effect to the legislature's intent, the Court first looks to the plain, ordinary meaning of the statutory language, <u>In re Paynter 2-Lot Subdivision</u>, 2010 VT 28, ¶ 6, 187 Vt. 637 (citations omitted); and see <u>In</u>

7

re Eustance Act 250 Jurisdictional Opinion, 2009 VT 16, ¶ 14, 185 Vt. 447 (citing In re Ambassador Ins. Co., 2008 VT 105, ¶ 18, 184 Vt. 408).

Where the plain meaning of the words of the statute provides insufficient guidance to ascertain the legislative intent, the Court must "look beyond the language of a particular section standing alone to the whole statute, the subject matter, its effects and consequences, and the reason and spirit of the law." State v. Thompson, 174 Vt. 172, 175 (2002) (citing In re Wal*Mart Stores, Inc., 167 Vt. 75, 84 (1997)); see also Appeal of Carroll, 2007 VT 19, ¶ 9, 181 Vt. 383; Tarrant v. Dep't of Taxes, 169 Vt. 189, 197 (1999). In this regard, the Court examines the language and legislative history of the statute and any policy it was designed to implement. Dept. of Corrs. v. Human Rights Comm'n, 2006 VT 134, ¶ 7, 181 Vt. 225 (citing Human Rights Comm'n v. Benevolent & Protective Order of Elks, 2003 VT 104, ¶ 13, 176 Vt. 125); cf. Glebe Mountain Wind Energy, LLC, No. 234-11-05 Vtec, slip op. at 9 (Vt. Envtl. Ct. Aug. 3, 2006) (Durkin, J.).

Most importantly for the purposes of the present case, courts presume "that the Legislature intended to change the meaning of a statute when it amends it," or to clarify the existing law where the circumstances clearly indicate that clarification was intended. State v. Thompson, 174 Vt. at 178. That is, when the legislature amends a statute, it is presumed to "add[] and remove[] statutory language advisedly." Tarrant, 169 Vt. at 196–97 (citing Payea v. Howard Bank, 164 Vt. 106, 107 (1995)). Courts presume that the legislature does not enact meaningless legislation. Loiselle v. Barsalow, 2006 VT 61, ¶ 16, 180 Vt. 531 (mem.) (citing Chittenden v. Waterbury Ctr. Cmty. Church, Inc., 168 Vt. 478, 491 (1998)).

Especially where an act adopted by the legislature "reflect[s] a comprehensive re-examination and revision" of the law on a particular subject matter, as did the comprehensive revision of the zoning statute in 2004, the legislature's alteration of a particular provision within that comprehensive rewrite of the statute "must be taken to have been deliberate." State Highway Bd. v. Loomis, 122 Vt. 125, 131 (1960) (citing

8

Conn v. Town if Brattleboro, 120 Vt. 315, 322 (1958); In re Cartmell's Estate, 120 Vt. 228, 232 (1958)).

The word "appurtenant" is generally used in property law to describe structures or property rights associated with, accompanying, or belonging to a parcel of property or building. It has a broader meaning than the word "attached." When used in property law, the term "appurtenant" describes an easement or other property right burdening one parcel of property, which runs with, or accompanies, another parcel of property to which it is "appurtenant." See, e.g. Rowe v. Lavanway, 2006 VT 47, ¶13, 180 Vt. 505.

Although it is more commonly used in the context of easements, the term "appurtenant" has also been used for many years in Vermont cases with reference to buildings or structures that are related to or associated with, but not necessarily attached to, a principal feature, building, or structure. See, e.g. Gardner v Jeffries, 2005 VT 56, ¶¶ 2, 11, 178 Vt. 594 (interpreting a restrictive covenant giving the right to construct a swimming pool, tennis court, and "the usual fences and structures appurtenant thereto"); State v. Bishop, 127 Vt. 11 (1968) (applying the second degree arson statute, 13 V.S.A. § 503, then defined as other than the burning of a "dwelling house or the structures appurtenant thereto," which appurtenant structures were further listed in the first degree arson statute, § 502, to include barns, stables, and other outbuildings); Shaw v. Chamberlin, 45 Vt. 512, 513 (1873) (describing the construction of a "new dwelling-house and other buildings appurtenant" to it); State v. Twenty-Five Packages of Liquor, 38 Vt. 387, 391 (1866) (referring to hotel "and the adjacent outbuildings appurtenant to it" as "together constituting" the hotel premises, for the purposes of a search warrant).[8]

---

[8] Similarly, courts in other states have also interpreted the term "appurtenant" to refer to structures that are related to but not necessarily attached to the primary building on a lot. See, e.g., Kramer v. Dalton Co., LLC, 235 Or. App. 494, 501 (Or. Ct. App. 2010)

Even if the meaning of the term "appurtenant" were not sufficiently plain to distinguish it from the term "attached," it is apparent from the context of the statutory amendment that the legislature intended, when replacing the phrase "within or attached" with the phrase "within or appurtenant," to broaden the statutory protection of 24 V.S.A. § 4412(1)(E) to cover detached, as well as attached, accessory dwelling units.

That legislative intent is reflected in the legislative policy of the statute to increase Vermont's stock of affordable housing at least in part by reducing the statutory restrictions on accessory dwelling units.  24 V.S.A. § 4382(a)(10); and see the addition of "required provisions for affordable housing" to the title of § 4412(1).  It is also reflected in the specific provision of § 4412(1)(F)(i) that municipalities are allowed to adopt bylaws that are less restrictive of accessory dwelling units than what is specified in the state statute, implying that municipalities may <u>not</u> adopt or retain provisions in their zoning bylaws that are <u>more</u> restrictive of accessory dwelling units than is the state statute.  This legislative intent is reinforced by the clear statement within § 4412 itself that it contains provisions that apply in every municipality "[n]otwithstanding any existing bylaw," and the equally clear statement in § 4481 that the provisions of § 4412 "shall control over any inconsistent municipal regulations, ordinances or bylaws."

Moreover, 24 V.S.A. § 4412(1)(F)(ii) specifically allows municipalities to require conditional use review for new accessory <u>structures</u> that are involved in the creation of accessory dwelling units.  This language would be surplusage if all accessory dwelling units in any event had to be part of—that is, within or attached to—the primary single-

---

(referring to structures such as a greenhouse, swimming pool, or storage structure as "appurtenant" to a single-family dwelling); <u>Viking Properties, Inc. v. Holm</u>, 155 Wash. 2d 112, ¶¶ 3, 24 (Wash. 2005) (stating that "'appurtenant' has a clear and long established meaning" when interpreting a covenant that allowed, as appurtenant to a dwelling house, "a private garage, garden house, . . . or other private appurtenant outbuildings or structures").

family dwelling. Courts are instructed to presume that the legislature chooses legislative language advisedly, so as not to create surplusage. Loiselle, 2006 VT 61, ¶ 16, (mem.) (citing State v. Carroll, 2007 VT 57, ¶ 7, 175 Vt. 571 (mem.)).

Accordingly, based on the foregoing, § 512 of the Monkton Zoning Regulations cannot be read to prohibit an accessory dwelling unit from being created in a structure separate from the primary single-family dwelling, because that reading conflicts with the state statute, 24 V.S.A. § 4412(1)(E), which applies "notwithstanding the existing" Zoning Regulations and "controls over any inconsistent" Zoning Regulations. 24 V.S.A. § 4481.

Because the Zoning Administrator, and the DRB on appeal, did not address the merits of the application for an accessory dwelling unit in a separate structure, their decisions must be VACATED and the application must be remanded for the Zoning Administrator, or the DRB on appeal, to decide in the first instance if the application meets the requirements of the Monkton Zoning Regulations and the state statute.

It will be up to the Zoning Administrator in the first instance, or the DRB on appeal, to determine whether the proposed accessory dwelling unit is or is not accessory, that is, clearly subordinate, to the primary single-family dwelling. Similarly, it will be up to the Zoning Administrator in the first instance, or the DRB on appeal, to determine whether the proposed accessory dwelling unit is or is not appurtenant or related to the primary single-family dwelling. If Appellants have obtained the requisite ANR approval of the water supply and wastewater disposal systems for the proposed accessory unit, they are free to provide evidence of such approval to the Zoning Administrator for consideration with their application, as required by § 320(5) of the 1986 Monkton Zoning Regulations.

11

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Summary Judgment is GRANTED and the Town's Motion for Summary Judgment is DENIED: the 1986 Monkton Zoning Regulations conflict with 24 V.S.A. § 4412(1)(E) to the extent that they prohibit an accessory dwelling unit from being proposed to be constructed in a detached accessory building. Accordingly, the decisions of the DRB and of the Zoning Administrator are hereby VACATED and the application is hereby REMANDED to the Zoning Administrator, concluding this appeal.

Any appeal from a later decision of the DRB would require a new timely notice of appeal and would receive a new docket number at that time. If any such future appeal is brought by Appellants, they may request the Court at that time to waive the filing fee, as the present appeal was resolved in favor of Appellants.

Done at Berlin, Vermont, this 23rd day of August, 2011.

_____
Merideth Wright
Environmental Judge